THE FAIRFIELD COUNTY TURNPIKE COMPANY *against* THORP.

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

The declarations of an agent, not accompanying any authorized act, are not evidence against his principal.

The admissions of a stockholder and director in an incorporated turnpike company, are not evidence against the corporation.

Because an individual stockholder cannot be compelled, on account of his interest, to testify against the corporation, it is not a legal inference, that his admissions are evidence.

The effect of a written instrument cannot be varied, by parol testimony.

Therefore, where the defendant, by his subscription for the stock of a turnpike company, promised to pay 25 dollars *per* share, if the company assume the making of the road, &c. ; and he offered parol testimony to shew, that there was another condition annexed to this promise, *viz.* that a sufficient sum be subscribed to build and complete the road ; it was held, that such testimony was inadmissible.

Where it was provided, by the charter of a turnpike company, that a general meeting of the company should be holden annually, and that the meetings after the first, should be holden at such time and place as the company should prescribe ; that the affairs of the company should be governed by a board of directors, chosen by the stockholders in general meeting ; and that the officers chosen by the company should hold their offices until others should be appointed in their stead ; and it appeared, that at the first meeting, seven directors were duly appointed, and a by-law was passed authorizing the directors to order the payment of instalments ; but the time and manner of holding future meetings were not prescribed ; that two instalments were laid, by directors chosen at subsequent meetings, four of whom were chosen at the first meeting ; and that the defendant expressly promised to pay these instalments, more than thirty days after the last was laid ; it was held, 1. that as the votes laying these instalments, purported to be passed by the directors of the company, the presumption of law was, in the absence of evidence to the contrary, that they were passed by legal directors, and the instalments were legally imposed ; 2. that only reasonable notice to the defendant was requisite ; and 3. that his express promise to pay, was sufficient evidence that such notice had been given.

*Qu.* Whether it would not be sufficient, in such case, to make the votes valid, that they were passed by directors *de facto* ?

THIS was an action of *assumpsit* for certain instalments on a subscription by the defendant to the capital stock of the company.

The cause was tried at *Fairfield, April* term 1839, before *Williams,* Ch. J.

The plaintiffs claimed to have proved all the facts stated in their declaration, tending to shew their right to sue and the obligation of the defendant. The writing subscribed by the

*Fairfield,*
June,1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

defendant and the other stockholders, was as follows :—
" Whereas the legislature of the state of *Connecticut*, at its
session held at *New-Haven*, on the first *Wednesday* of *May*,
1834, on the application of *Walter Thorp* and others, appoint-
ed a committee to lay out a turnpike road from at or near the
dwelling-house of *David Williams*, in *Weston*, in *Fairfield*
county, passing through a part of said *Weston, Reading*,
*Newtown, Danbury* and *Brookfield*, in said county, termina-
ting at or near *Meeker's Mills*, (a place so called) in said
*Brookfield ;* and incorporated said *Walter Thorp, Jeremiah
Oakley* and others, in a company, by the name of *The
Fairfield County Turnpike Company*, to build the same :
said committee laid out said road, and made their report to the
county court held at *Danbury*, in and for *Fairfield* county,
on the third *Tuesday* of *November*, 1834 ; and said report
was accepted by said court : We, the undersigned, do hereby
subscribe the number of shares of stock in said company, as
is annexed to our respective names, at twenty-five dollars a
share ; if said company assume the making of said road, as
laid out by said committee, agreeable to their charter, we do
hereby promise and agree to pay the same to said company,
in such manner and at such times as the directors of said com-
pany shall direct ; for value received. *January* 29th, 1835.
*Joel Thorp* [the defendant]—eight shares—200 dollars."

The charter provided, that at least one general meeting of
the company should be held annually ; and that the other
meetings after the first should be held at such time and place
as the company should prescribe. It also provided, that the
affairs of the company should be governed by a board of di-
rectors, to be chosen by the stockholders, in general meeting ;
and that all officers chosen by the company should hold their
offices until others should be appointed in their stead. The
company was duly organized under its charter, in the manner
therein pointed out ; and at the first meeting, on the 8th of
*May*, 1835, seven directors were elected, of whom the defend-
ant was one. It was not shewn, that the company ever pre-
scribed the time and place of its subsequent meetings ; but the
records of the company shewed, that at a meeting of the com-
pany, on the 3rd of *August*, 1835, sundry by-laws were pass-
ed ; one of which was, that the directors should, from time to
time, order the payment of the several shares, by instalments,

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

as they might deem necessary, giving thirty days notice thereof in some newspaper printed in the county. By the records of the company, it also appeared, that at the annual meeting of the company on the 28th of *March*, 1836, directors were chosen for the year ensuing, four of whom were original directors : that at a meeting of the directors on the 3rd of *August*, 1835, it was voted, that an instalment of ten dollars a share be laid on the stock of the company, to be paid on the 18th of *September* following : that at a meeting of the directors on the 12th of *January*, 1836, it was voted, that a second instalment of ten dollars on a share be laid on the stock of the company, payable to the treasurer : and that at a like meeting, on the 11th of *October* following, it was voted, that an instalment of five dollars on a share be laid on the stock of the company, payable to the treasurer, on the 18th of *November* ensuing.

The plaintiffs claimed to have proved, that notice was given of these instalments, in a public newspaper printed at *Bridgeport ;* but failed to prove, that it was given for the time required by the by-law : and that the notices purported to be given in behalf of the directors, one signed by the clerk and the others by the treasurer of the company. The plaintiffs further claimed to have proved, that more than thirty days after the last instalment was laid, the defendant expressly promised to pay all the instalments.

The defendant claimed, that as the company had never prescribed the time and place of holding its future meetings according to the charter, all such meetings were illegal and void ; and that the directors chosen at such meetings were not directors, and the by-laws made by them were not by-laws ; although he claimed, that such by-laws were binding on the company, being their own acts, and upon the directors. He also claimed, that the presumption of law was, that the second and third instalments were laid by the directors chosen at the illegal meeting held before the vote laying them was passed ; and prayed the court so to instruct the jury.

The plaintiffs, on their part, admitted, that the meetings of the company after the first, were illegal, and their acts, as such, void, particularly the by-laws which they passed ; but they claimed, that the acts of the directors were acts of directors *de facto*, and so binding and operative ; that as the by-

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

law was void, no notice to the defendant of the instalments was necessary ; that if it was, reasonable notice had been given ; and that the defendant had, by his promise to pay, admitted such notice or had waived it.

The court instructed the jury, that as both parties admitted that the meetings of the company after the first were illegally holden, no time of notice was required of the payment of the instalments laid ; that the most the defendant could claim, was, that reasonable notice should be given ; and that an advertisement in a paper in the county, together with the fact of the express promise of the defendant to pay, were sufficient evidence of notice to him : that as to the second and third instalments, they appeared to be laid by the directors, and this imported that it was done by the legal directors ; and in the absence of any evidence that these instalments were laid by those who had not the legal right to act as directors, they would have a right to find that these instalments were duly imposed.

In the course of the trial, the defendant offered to prove, by the testimony of *Isaac Thorp*, that *Timothy B. Hickok* was agent of the company to procure subscriptions to its stock, and that *Hickok* was an original stockholder and director of the company, and was so at the time of the conversation alluded to, and still is a stockholder ; and that the witness heard *Hickok* admit, that when the defendant subscribed for the stock standing in his name, *Hickok* agreed with him, that he should not be liable therefor, unless sufficient was subscribed to build the road and complete it ; the defendant intending to accompany this testimony with evidence to prove that sufficient for that purpose was not subscribed. To the admission of this testimony, the plaintiffs objected ; and the court excluded it, upon the ground that the admissions of a stockholder and director of the company were not evidence against the company, and especially to alter or impair a written contract.

The plaintiffs obtained a verdict ; and the defendant moved for a new trial, for the rejection of the testimony offered by him and for a mis-direction.

*Dutton,* in support of the motion, contended, 1. That the admissions of *Hickok* should not have been rejected. In the first place, the admissions of parties in interest, are always ad-

missible—*e. g. cestui que trust*, &c. 2 *Stark. Ev.* 41. *Beers* v. *Hawley*, 2 *Conn. Rep.* 467. *Dewit* v. *Baldwin*, 1 *Root* 138. *Beach* v. *Swift*, 2 *Conn. Rep.* 269. *Jackson* v. *Myers*, 11 *Wend.* 533.

Secondly, the admissions of persons jointly liable, are admissible ; as of joint promisers ; (*Howard* v. *Cobb*, 3 *Day* 309.) of one who has given a letter of credit ; (*Meade* v. *McDowell*, 5 *Binn.* 195.) of the principal, in an action against principal and surety ; (*Simonton* v. *Boucher, Whart. Dig.* 249. *pl.* 325.) of a partner not sued ; (2 *Stark. Ev.* 44.) of a third person, who had indemnified the sheriff, one of the parties. *Duke* v. *Aldridge*, cited 11 *East* 584. n.

Thirdly, admissions where there is a community of interest, are received. *The King* v. *Hardwick*, 11 *East* 578. 590. *Brandt* d. *Van Cortlandt* v. *Klein*, 17 *Johns. Rep.* 335.

Fourthly, if a person is not compellable to testify on the ground of interest, his admissions are evidence. *Fitch* v. *Chapman*, 10 *Conn. Rep.* 9. *Nichols* v. *Hotchkiss*, 2 *Day* 121. 125. *Woodward* v. *Paine* & al. 15 *Johns. Rep.* 493. *Alexander* v. *Mahon*, 11 *Johns. Rep.* 185. *Cook* v. *Swan*, 5 *Conn. Rep.* 145. *Deming* v. *Carrington*, 12 *Conn. Rep.* 1. *Dwight* v. *Brown*, 9 *Conn. Rep.* 83. 2 *Stark. Ev.* 91. n. (*s.*)

Fifthly, there is no direct decision against receiving the admissions of a corporator, the corporation being a party.

2. That parol evidence is admissible to shew that an instrument was not to take effect. *Huntington* v. *Smith*, 4 *Conn. Rep.* 235. *Wolcott* v. *Coleman*, 1 *Conn. Rep.* 375. *Lansing* v. *Gaine* & al. 2 *Johns. Rep.* 300. *Jackson* d. *Gratz* & al. v. *Catlin, Id.* 248. *Raymond* v. *Smith* & al. 5 *Conn. Rep.* 555. *Coe* v. *Turner, Id.* 86. *Sparrow* v. *Smith, Id.* 113. *Fleming* v. *Gilbert*, 3 *Johns. Rep.* 528. *Couch* v. *Meeker*, 2 *Conn. Rep.* 302. *Beers* & al. v. *Hawley* & al. *Id.* 667. 469.

3. That the presumption of law, and of common sense, is the reverse of that stated in the charge. When the directors are spoken of, the directors *last chosen* are meant ; and these were not legal directors.

*Bissell* and *Booth*, contra, contended, 1. That the testimony of *Isaac Thorp* was properly excluded. First, the admis-

*Fairfield,* June, 1839.

Fairfield Coun-ty Turnpike Company

*v.*

Thorp.

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

sions of *Hickok*, as such, were not evidence. He was not a party : the corporation was the party. In the case of *The Hartford Bank* v. *Hart,* 3 *Day* 495. it was decided, that the admissions of a member of the corporation, not made in the exercise of any corporate duty, were not evidence against the corporation ; and this point has ever since been considered as settled. *Hickok*, it is true, was an agent; but he was not an agent to make any agreement. His only authority was, to get subscribers.

Secondly, the testimony offered was inadmissible, as it went to vary a written agreement. The writing contained a promise to pay, in a certain event : the evidence went to add another condition to the promise.

2. That the by-laws were utterly void, and not binding on either party. *Stow* & al. v. *Wyse,* 7 *Conn. Rep.* 214. *Hayden* v. *Noyes,* 5 *Conn. Rep.* 391.

3. That all that the plaintiffs were bound to prove, to entitle them to recover, was, that those who were *de facto* the directors of the company, imposed the instalments and gave reasonable notice to the defendant ; and this was shewn. *McCall* v. *The Byram Manufacturing Company,* 6 *Conn. Rep.* 428. *Canal Bridge* v. *Gordon,* 1 *Pick.* 304.

WILLIAMS, Ch. J. The evidence offered by the defendant was objected to and ruled out, upon two grounds; first, on account of the source from whence it was derived ; and secondly, on account of the nature of the evidence itself.

That *Hickok* was a director of the company is of no importance, unless to prove him an agent,—a fact not denied. The testimony offered, however, was not to shew what he did as agent, except by his admissions or confessions of what he had done. The rule is well settled, that the confessions of an agent are not evidence against his principal, although his declarations accompanying his act may be admitted as part of the *res gesta.* *Langhorn* v. *Allnut,* 4 *Taun.* 511. 519. *Garth* v. *Howard,* 8 *Bingh.* 451.

It is claimed, that *Hickok* being a stockholder in the company, his declarations are admissible as the confessions of a party. That the confessions of the party on the record may be given in evidence, is certainly true. Testimony of this kind proceeds upon the ground that is not to be presumed that per-

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

sons will admit any thing against their interest.  There are cases, however, where the party on the record has really no interest, or at most a mere nominal interest; as where a person has assigned a note without recourse; where a partnership is dissolved, and one is to discharge the debts, &c.; in which cases, this evidence is admitted, but with reluctance.   In *New-York,* it has been held, that the admissions of partners after a dissolution, cannot be given in evidence against a co-partner, except to prevent the operation of the statute of limitations. *Hopkins* v. *Banks,* 7 *Cow.* 650. 653.  *Gleason* & al. v. *Clark,* admr. 9 *Cow.* 57.  *Hackley* v. *Patrick* & al. 3 *Johns. Rep.* 536.  We have adhered to the *English* rule in admitting the evidence, although in certain cases holding that it was entitled to no weight.  *Coit* v. *Tracy,* 9 *Conn. Rep.* 1.  8 *Conn. Rep.* 268. 277.  It becomes important to inquire, in this case, whether *Hickok* is a party upon the record.  If he is, then any single shareholder in a bank of any amount of capital, is a party to any suit brought by the bank, and his declarations are admissible.   Whatever may be said as to the shareholders in corporations being parties in fact or parties in interest, it is certain they are not parties upon the record.  The record speaks only of the artificial, intangible being, created by the act of incorporation.  In corporations of this character, it speaks of and knows no individual.  There are cases, however, in which courts have drawn aside the veil and looked at the character of the individual corporators; particularly, when the question arises as to the jurisdiction of the court.  This has been done, by the supreme court of the *United States,* the better to carry into effect the spirit of the constitution, giving the courts of the *United States* jurisdiction in suits between inhabitants. *Bank of the United States* v. *Deveaux,* 5 *Cranch* 91, 2.  But this is confined to the question of jurisdiction, and has never been extended further.  *Bank of Augusta* v. *Earle,* 13 *Pet.* 586. So too, this court has holden, that a judge shall not sit who is within the prohibited degrees of relationship to a member of a corporation; and this to carry into effect the spirit of the act and to prevent any suspicion of partiality.  These cases, however, rather form exceptions to the rule than create a new one. We see nothing in the case before us, which ought to induce the court to extend the rule of law beyond its letter.  On the other hand, there are strong objections to this evidence.  The

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

first results from the nature of the evidence itself.   For although the declarations of the party in interest against his interest, if fairly represented, are strong evidence against him; yet there is so much suspicion often attached to it from the misapprehension of the hearer and the treachery of memory in the reporter, to say nothing of the danger arising from a prejudiced mind, that it is often to be received with many grains of allowance.    In cases of this kind, the interest is frequently so minute as to create no presumption, or a very slight one, that the person would not make such a declaration because against his interest.    On the contrary, many circumstances too minute for explanation, might lead to a bias much stronger than such pecuniary interest.    Every day's experience will shew us, that the prejudices and alienations which arise in the intercourse of business, entirely overpower the slight interest of small shareholders; and although this would be no reason for excluding evidence clearly admissible, yet it may be proper, in considering whether evidence excluded by the letter of the rule, is within its spirit.    Besides, the knowledge of individual stockholders is generally so limited as to make it of no importance.

It is said, however, that all these are proper considerations for the jury to weigh.    But when we consider the surprise upon the real party from testimony of this kind from unexpected quarters, which must frequently happen, and the embarrassments occasioned thereby, the multitude of collateral inquiries which might often arise in investigating the real connexion of the persons whose admissions are offered in evidence, and the delay attending such inquiries, it seems to us, that such evidence would more often mislead than guide to truth.    It seems to be supposed, that because the individual stockholder cannot be compelled to testify, his declarations therefore are admissible; but it does not follow, that the declarations of any person who cannot be compelled to testify on account of his interest, are admissible as evidence.    Take the case of bail, of a feme covert, of a person, who, by his answer, might subject himself to a penalty or a debt; their declarations are not admissible as a matter of course.    In such cases, perhaps a court of chancery, upon proper application, might compel a disclosure.    Then there would be no surprise; and such terms might be imposed as would render it safe.    We know that in *England,* it has been decided, by the court of *King's Bench,* that the admis-

*Fairfield*,
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

sions of a rated parishioner may be evidence in a suit by the inhabitants of the parish. It seems to have been thus first decided upon the ground that it was in fact a suit against the inhabitants themselves. *The King* v. *Inhabitants of Hardwick*, 11 *East* 578. 586. There the suit is, in name as well as in fact, against the inhabitants; and the property of the individuals is liable to be taken in execution. *McLoud* v. *Selby*, 10 *Conn. Rep.* 395. And in a case but two years before, Lord *Ellenborough* held, that in an action by a corporation, what any individual said [referring to individual corporators] could not be given in evidence, although he did not extend the rule to the declarations of a public officer of the corporation. *The Mayor of London* v. *Long*, 1 *Campb.* 22. Before either of these cases, our superior court had decided, that the declarations of an individual member of a corporation, even although he was an officer in it, could not be given in evidence. *Hartford Bank* v. *Hart*, 3 *Day* 494. That decision has ever since been acquiesced in; and it is by the supreme court of *New-York* favourably contrasted with the *English* decisions. *Osgood* v. *Manhattan Bank*, 3 *Cowen* 623. And upon a careful review, we are not disposed to question the propriety of what has long been considered our settled practice. In the state of *Maine*, too, a similar decision has been made. *Polleys* v. *Ocean Insurance Company*, 2 *Shep.* 141.

There is another objection in this case to the evidence offered, equally fatal. It is in direct collision with the terms of the written contract. By the writing, the defendant expressly promised to pay twenty-five dollars *per* share, if the company assume the making of the road, &c. He has inserted the terms, upon which, if complied with, he will pay. He now proposes to add another condition—if a sufficient sum is subscribed to build and complete the road. That the effect of a written instrument cannot be varied by parol testimony, is too well settled to need argument or authority to support it. A few cases only will be alluded to. Where a note is payable on demand, evidence cannot be admitted to prove that it was agreed it should not be paid until the death of the maker, or that it should be renewed when it fell due, or paid from a particular fund. *Hoare* & al. v. *Graham* & al. 3 *Campb.* 57. *Campbell* v. *Hodgson*, 1 *Niel Gow*, 74. *Moseley* v. *Hanford*, 10 *Barn. & Cres.* 727. *Woodbridge* v. *Spooner* &

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

ux. 1 *Chitt. Rep.* 196.    S. C. 3 *Barn. & Ald.* 233.    So where such evidence was offered to shew that the defendant indorsed a note under agreement that he should not be called upon until a pledge was exhausted, it was held inadmissible. *The United States Bank* v. *Dunn,* 6 *Pet.* 51.

It is claimed, that this testimony is proper to shew that this instrument was never to have any operation at all, until such a sum was subscribed.    There was no evidence of any agreement that this writing was not to be delivered over to the company until such a subscription was obtained.    So far from it, it was delivered to the agent of the company appointed to procure these subscriptions.    The writing, therefore, was delivered absolutely, subject only to the conditions contained in it.    It is then the naked case of an attempt to controul the effect of a written instrument, by parol evidence.

It has also been held, by the supreme court of the *United States,* in the case of *The United States Bank* v. *Dunn,* 6 *Pet.* 54. 8 *Pet.* 16. that an agreement by the president and cashier of a bank, that the indorser of a note should not be called upon, unless a pledge was insufficient, could not be proved, because these officers had no right to make such an agreement. It would seem, therefore, that this principle would have been sufficient to exclude the evidence.    But as this ground was not taken below, and as possibly it might have been obviated by other testimony, we barely allude to it.    The other objections are sufficient.

The defendant also claimed, that the charge was incorrect. By the charter it was provided, that the meetings of the company should be holden annually ; and that the meetings which took place after the first, should be holden at such time and place as the company should prescribe.    It further provided, that the affairs of the company should be governed, by a board of directors, chosen by the stockholders in general meeting ; and that the officers appointed should hold their offices until others should be appointed in their stead.    At the first meeting, seven directors were duly appointed ; and a by-law was passed, authorizing the directors to order the payment of instalments; but the time and manner of holding future meetings was not prescribed.    It appeared, by the records of the company, that at the annual meeting of the company on the 28th of *March,* 1836, directors were chosen for the ensuing year; four, or a

majority, of whom were originally directors; and that at a
meeting of directors on the 12th of *July*, 1836, they voted,
that an instalment of ten dollars *per* share be laid upon the
stock, to be paid to the treasurer on the 1st of *October* then
next; and on the 11th of *October* following, it was voted, that
an instalment of five dollars be laid, payable upon the 18th of
*November* following.  And the plaintiffs proved, that the de-
fendant expressly promised to pay these instalments, more
than thirty days after the last was laid.  There was no ques-
tion as to the first instalment; but it was claimed, that the
second and third instalments were not legally imposed: that
as the times and places of holding the meetings of the company
had never been prescribed, by the company, such meetings
were illegal; and of course, the instalments were not legally
laid; and that no legal notice of them was ever given to the
defendant.  The court instructed the jury, that as the votes
to lay the second and third instalments purported to be passed
by the directors of the company, the presumption of law was,
that they were passed by legal directors; and, in the absence
of all evidence to the contrary, they might find those instal-
ments legally imposed; and that reasonable notice to the de-
fendant only was required; and that his express promise to
pay, was sufficient evidence that such notice had been given.

The defendant claims, that when the records speak of the
directors, they must mean the directors last chosen; and that
the fact that the records shew the directors were chosen under
circumstances when such a choice was illegal, necessarily
leads to the inference that the votes were passed by these di-
rectors.

It appears, that there existed a board of directors competent
to act; and that the directors did act.  It also appears, that a
major part of the directors last chosen were legal directors, if
not by that appointment, by virtue of the original appointment.
Under these circumstances, is it incumbent upon the plaintiffs
to prove any thing more than they have done?  Is not this
sufficient *prima facie* evidence that it was legally done, under
the maxim that the law presumes what is done to be rightly
done?  Instead of there being but three persons acting as
directors under an irregular choice, suppose there was but one;
should we hold their acts void, because that one might have
been admitted to the board, and because his vote might have

*Fairfield,*
June, 1839.

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

*Fairfield,
June, 1839.*

Fairfield Coun-
ty Turnpike
Company
*v.*
Thorp.

turned the scale? It has been decided in the state of *New-York,* that although illegal votes are received at an election, this will not vitiate the election, but it must be found affirmatively, that the successful ticket received enough of such votes to reduce it to a minority. *Ex parte Murphy, 7 Cowen,* 153. As there was here a majority of directors, who were legal directors, it was then incumbent upon those who claimed this vote of the board to be illegal, to have shewn that fact. In the absence of that testimony, we think the rule adopted at the circuit was correct. By this, however, we do not mean to say, that another ground assumed by the plaintiffs, is not correct, *viz.* that it is enough for the purposes of this case, that the act has been done by directors *de facto.* In the state of *New-York,* it has been decided, that the proceedings of the trustees of a religious society were valid, the trustees being such *colore officii,* although their election was irregular. *Trustees of Vernon Society* v. *Hills,* 6 *Cowen* 23. This court also have holden, that service of a writ upon the secretary of a corporation *de facto* only, was good. *McCall* v. *Byram Manufacturing Company,* 6 *Conn. Rep.* 428.

The matter of notice has not been much insisted on; and the defendant surely cannot, when no term of notice is prescribed, complain, if he has had reasonable notice; and the fact that the defendant promised to pay both instalments, more than thirty days after the last was laid, is sufficient evidence of his having had reasonable notice. As to the notice to others; the fact does not appear what notice may have been given to them; nor is it very easy to see how the want of notice to them could constitute a defence for this defendant.

We think, therefore, that there ought not to be a new trial.

In this opinion the other Judges concurred, except SHERMAN, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.