**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SKOSHI THEDFORD FARR,

     Defendant - Appellant.

No. 07-6187

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CR-06-191-F)**

---

Mack K. Martin (Kendall A. Sykes with him on the briefs) of Martin Law Office, Oklahoma City, Oklahoma, for Defendant-Appellant.

Susan Dickerson Cox, Assistant United States Attorney (John C. Richter, United States Attorney, with her on the briefs), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **KELLY, HOLLOWAY,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

     Skoshi Thedford Farr appeals her conviction for tax fraud. She alleges that

during trial the government constructively amended the indictment against her –

trying her not just for the crime described in the indictment but also for a separate

and additional offense.  We agree.  The grand jury indicted Ms. Farr for one crime (failure to pay quarterly employment taxes for a medical clinic) but at trial the government pursued her for another offense (failure to pay a trust fund recovery penalty assessed against her personally).  Under the Constitution, the government may only proceed at trial against the accused "for . . . [an] infamous crime . . . on presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  At the same time, we cannot agree with Ms. Farr's additional argument that there exists insufficient evidence in this record to sustain her conviction and thus that she cannot be subjected to retrial under a lawful indictment.  Accordingly, we reverse but leave open the possibility of a new trial under a new indictment.

I

A

The Internal Revenue Code ("Code") requires "employer[s]" to deduct from their employees' wages the employees' share of FICA and individual income taxes.  *See* 26 U.S.C. § 3102(a), 3402(a).  The employer is liable for the withheld portion of the employees' payroll taxes and must pay over the full amount to the government each quarter.  26 U.S.C. § 3403.[1]  These withheld amounts are considered to be held in a "special fund in trust for the United States" after collection each pay period until they are remitted to the government.  26 U.S.C.

---

[1]  Section 3403 provides in pertinent part that "[t]he employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter . . . ."

§ 7501; *see Slodov v. United States*, 436 U.S. 238, 243 (1978).  After the employer pays net wages to its employees, the withheld taxes are credited to the employees "regardless of whether they are paid by the employer, so that the IRS has recourse *only against the employer* for their payment."  *Slodov*, 436 U.S. at 243 (emphasis added).

From 1984 through 1999, Ms. Farr served as the general manager or administrator of her husband's alternative medicine clinic in Oklahoma City, which he operated from 1978 until his death in December 1998.  Apparently to avoid Internal Revenue Service ("IRS") scrutiny and collection efforts, the clinic used several names and associated tax identification numbers over the years, operating variously as "Genesis Medical Center," "Crossroads Unlimited Trust," and "ATHA-Genesis."  Throughout its years of operation, the clinic filed quarterly federal tax returns (IRS Form 941) reporting wages paid and federal taxes withheld for employees, but failed conspicuously to pay those withheld quarterly employment taxes over to the federal government.  The clinic's ever-changing name and tax identification number aided its efforts to avoid detection, making it difficult for IRS revenue officers to locate assets for the collection of the delinquent employment taxes.

The IRS is, of course, hardly without recourse in such circumstances.  The Code provides a broad array of tools for the IRS to collect the withheld employment taxes from employers who neglect to pay as required by Section

3403.  *See Slodov*, 436 U.S. at 243-44.  In addition, 26 U.S.C. § 6672 allows the IRS, in effect, to pierce the corporate veil and proceed against individual officers or employees responsible for collecting the offending company's quarterly employment taxes.  Specifically, Section 6672 provides that the officers or employees who, on behalf of an employer, are responsible for collecting withholding taxes and paying them over to the government, and who willfully fail to do so, may be personally assessed a civil penalty equal to the amount of the delinquent taxes.[2]  *See Bradshaw v. United States*, 83 F.3d 1175, 1178 (10th Cir. 1995) ("The § 6672 penalty may be assessed against (1) any responsible person (2) who has willfully failed to collect, account for, or pay over federal employment taxes.").  This is exactly how the IRS proceeded in this case, assessing a Section 6672 "trust fund recovery penalty" against Ms. Farr, as the person allegedly responsible for turning over the clinic's withheld quarterly employment taxes to the government.

_____

[2]  Section 6672 provides, *inter alia*:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. . . .

When Ms. Farr did not pay the penalty assessed against her, a civil proceeding evolved into a criminal one. The government sought and received an indictment in August 2006 against Ms. Farr. Specifically, the grand jury charged Ms. Farr under 26 U.S.C. § 7201, a generic tax evasion provision providing that

> [a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Significantly for our purposes, however, the government chose in this case not to seek a broad indictment simply reciting the generic language of Section 7201, but instead deliberately added additional detail to its charge. As adopted by the grand jury, the indictment alleged, in pertinent measure,

> [t]hat beginning on or about the 12th day of November, 2001, and continuing until the present, in the Western District of Oklahoma and elsewhere, SKOSHI THEDFORD FARR, the defendant herein, a resident of Oklahoma City, Oklahoma, and Grants Pass, Oregon, did willfully attempt to evade and defeat the payment of the *quarterly employment tax for ATHA-Genesis Chapter due and owing by her* to the United States of America for the quarters 6-99, 9-99, and 12-99 in the amount of $72,076.21 by concealing and attempting to conceal from the Internal Revenue Service the nature and extent of her assets and the location thereof and placing funds and property in the names of nominees. All in violation of Title 26, United States Code, Section 7201.

Aplt. App. # 2 at 2-3 (emphasis added).[3]

B

At trial, Ms. Farr's counsel repeatedly called attention to the fact that the grand jury's indictment charged her with evading payment of the "quarterly employment tax for [the clinic] due and owing by her." Counsel urged that an acquittal was required because, under Section 3403, quarterly employment taxes are the sole responsibility of the "employer," specifically identified in the indictment as the ATHA-Genesis Clinic. Counsel noted that Ms. Farr was not the "employer" and quarterly employment taxes thus were not and could never have been, as alleged, "due and owing from her." Rather, counsel argued, Ms. Farr was only ever personally assessed, and failed to pay, a "trust fund recovery penalty" under Section 6672, a matter that counsel argued was not encompassed within the indictment. Counsel introduced this theory to the jury as early as his opening statement:

> The evidence will be that she hasn't been indicted for failure to pay, the testimony of witnesses will be trust fund recovery penalty assessments, but quarterly employment taxes. And I submit to you that the witnesses in this case will testify that she did not evade the payment of these quarterly employment taxes for Crossroads [or] ATHA-Genesis, as alleged by the government.

---

[3] This language is drawn from Count Two of the indictment. Count One similarly charged Ms. Farr with evading quarterly employment taxes due for 1995, a period during which Mr. Farr was still alive and operating the clinic; because the jury acquitted Ms. Farr on that count, it is not before us in this appeal.

Aplt. App. # 6.

As counsel predicted, the government pursued at trial the theory that Ms. Farr should be found guilty by virtue of her failure to pay the trust fund recovery penalty assessed against her personally. Indeed, the government's first witness, IRS officer Mr. Ambuehl, testified that the IRS had assessed the Section 6672 trust fund recovery penalty against Ms. Farr for the clinic's failure to pay its quarterly employment taxes, and that she had not paid the outstanding penalty. On cross examination, Ms. Farr's counsel elicited testimony from Mr. Ambuehl that the "quarterly employment taxes" charged in the indictment were the responsibility solely of the clinic as the "employer"; that Ms. Farr was never the employer; that the unpaid quarterly employment taxes were not her taxes, but those of the clinic; that Ms. Farr's failure to pay the trust fund recovery penalty when it was assessed against her was not charged in the indictment; and that quarterly employment taxes and trust fund recovery penalties are separate liabilities, due from different parties. Aplt. App. # 7.

This (promising for the defense) line of questioning continued throughout trial. Eventually, the district court intervened to address "the issue raised by the indictment." Aplt. App. # 11 at 112-13. Noting that the government had "four years [prior to trial] to get it right in the indictment," the district court expressed concern that the indictment was legally deficient by charging Ms. Farr for a crime

that its own witnesses suggested only the clinic could commit. Aplt. App. # 16.
After contemplating a motion for judgment of acquittal, however, the court
eventually sought to save the trial by preparing a jury instruction requiring the
jury to treat the trust fund recovery penalty discussed at trial and the quarterly
employment tax referenced in the indictment as interchangeable terms:

> You are instructed that, as a matter of law, for all purposes relevant
> to this case, the Trust Fund Recovery Penalty assessed against the
> defendant is to be treated as the equivalent of the quarterly
> employment tax referred to in Count 1 and Count 2 of the indictment.

Aple. App. at 7. The court acknowledged, with some regret, that its jury
instruction "forecloses [closing] argument that the defendant did not evade the
quarterly employment tax because all she was ever assessed for was the trust fund
recovery penalty," and "cuts . . . clean off" Ms. Farr's primary trial defense based
on the language of the indictment. Aplt. App. # 11 at 115, 114. The court went
on to state that "it rankles me to be having to scab over this problem [that] could
so easily have been avoided. . . . [B]y giving this instruction, I'm pulling the case
out of the ditch for the government, and as I said, it rankles me to have to be
doing that." *Id*. Aplt. App. # 11 at 113, 115. Ultimately, the jury convicted Ms.
Farr, and the district court sentenced her to thirty months in prison, three years of
supervised release, and $72,076.21 in restitution, but suspended the sentence
pending this appeal.

II

On appeal, Ms. Farr first asserts that the government's evidence at trial and the contested jury instruction constructively amended the indictment against her by allowing the jury to convict her for failing to pay the trust fund recovery penalty rather than evading the quarterly employment taxes of ATHA-Genesis, as alleged in the indictment. We review *de novo* the question whether the district court proceedings constructively amended the indictment, *United States v. Bishop*, 469 F.3d 896, 902 (10th Cir. 2006), and in doing so ultimately agree with Ms. Farr.

A

It is axiomatic in our legal system that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960); *see Schmuck v. United States*, 489 U.S. 705, 717 (1989) ("It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him."). This prohibition derives from the Fifth Amendment guarantee that "[n]o person shall be held to answer for a[n] . . . infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. Const. amend. V, as well as the Sixth Amendment's assurance of a defendant's right "to be informed of the nature and cause of the accusation" against him or

her, *id.* amend. VI. *See Bishop*, 469 F.3d at 902. As the Supreme Court long ago instructed,

> [i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed. . . .
>
> . . . Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists.

*Ex parte Bain*, 121 U.S. 1, 10, 13 (1887), *overruled in part on other grounds by United States v. Cotton*, 535 U.S. 625 (2002).

These observations remain no less binding upon us today. Accordingly, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone*, 361 U.S. at 215-16; *see United States v. Miller*, 471 U.S. 130, 143 (1985). An unconstitutional constructive amendment of a grand jury's indictment occurs when the evidence presented at trial, together with the jury instructions, "so alter[s] [the indictment]

- 10 -

as to charge a different offense from that found by the grand jury." *Miller*, 471 U.S. at 144; *see Stirone*, 361 U.S. at 213 ("The crucial question here is whether [the defendant] was convicted of an offense not charged in the indictment."); *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir. 1988) ("An indictment is constructively amended if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment."). In assessing a claim of an impermissible constructive amendment, our ultimate inquiry is whether the crime for which the defendant was convicted at trial was charged in the indictment; to decide that question, we therefore compare the indictment with the district court proceedings to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document. *See Miller*, 471 U.S. at 138-40, 144-45; *Stirone*, 362 U.S. at 216-17; *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007); *Hunter v. New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990).

B

Measuring against this standard, we are persuaded that the trial proceedings in this case effected a constructive amendment of the indictment against Ms. Farr. The indictment charged Ms. Farr with willfully attempting "to evade and defeat the payment of the quarterly employment tax for ATHA-Genesis Chapter due and

owing by her." But a potentially fatal incongruity soon emerged at trial: the government's own witnesses indicated that quarterly employment taxes are only ever due from an employer, conceded that Ms. Farr was not the employer in this case, and admitted that she never owed quarterly employment taxes for the clinic. In the face of this, the government sought to proceed against Ms. Farr for her failure to pay the trust fund recovery penalty subsequently assessed against her personally by the IRS under Section 6672. The district court understandably sought to save the trial it had begun and agreed to give the contested jury instruction. But that instruction, by dictating to the jury that the trust fund recovery penalty and the quarterly employment taxes are the same thing, effectively allowed the jury to convict Ms. Farr for failing to pay *either* the clinic's quarterly employment taxes purportedly "due and owing by her" *or* the trust fund recovery penalty assessed personally against her. That is, the district court essentially allowed the jury to consider two possible bases for conviction – the flawed one outlined in the indictment and another more accurate one added at trial.

Had the government simply charged Ms. Farr generically under Section 7201 with the willful evasion of a tax, we might have a different situation. But it did not. Instead, the government opted to include in its indictment particulars about the nature of the tax at issue, specifically charging her with evading the "quarterly employment tax for ATHA-Genesis Chapter due and owing by her." It

- 12 -

is settled law in this circuit, as elsewhere, that the language employed by the government in its indictments becomes an essential and delimiting part of the charge itself, such that "[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." *Bishop*, 469 F.3d at 902, 903 (holding that indictment limited the basis for conviction to a specific firearm by adding the phrase "any ammunition and firearm which has been shipped or transported in interstate commerce[,] *that is* a Hi-Point 9 mm pistol" (emphasis added)). By charging Ms. Farr with willfully attempting to defeat the "payment of the quarterly employment tax . . . due and owing by her," the indictment effectively limited the first element of Section 7201 – a substantial tax due and owing – to liability for quarterly employment taxes which she purportedly owed. From that point on, absent a proper amendment to the indictment by the grand jury, the government was not free to prove any other tax liability at trial. *See Stirone*, 361 U.S. at 218 ("It follows that when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened."). The fact that its own witnesses said Ms. Farr owed no such liability may well have put the government in a "ditch" but it was a ditch created by the government's own charging document.

- 13 -

To be sure, the government submits that a constructive amendment did not occur because the employment tax and the trust fund recovery penalty are proverbial alter egos – different words meaning the same thing. And the government is also surely correct that not every minor variance between the facts as presented at trial and those alleged in the indictment amounts to an unconstitutional constructive amendment. *See Sells*, 477 F.3d at 1237; *United States v. Williamson*, 53 F.3d 1500, 1513 (10th Cir. 1995); 1 Wright & Miller, Fed. Prac. & Proc. Crim. 3d § 128. Although the distinction between the concept of a permissible variance (reversible only upon a showing of prejudice) and an impermissible constructive amendment (categorically impermissible under our Constitution) "has been aptly described as 'sketchy,'" Wright & Miller § 128, the Supreme Court has sought to clarify that a variation between the evidence at trial and the indictment generally does not rise to the level of an unconstitutional constructive amendment if it does not raise the possibility that the defendant was convicted of an offense other than that charged in the indictment. *See Miller*, 471 U.S. at 136-39, 145 (distinguishing constructive amendments from variances on the basis that the former "*broaden* [ ] the possible bases for conviction from that which appeared in the indictment"); *Stirone*, 361 U.S. at 217; *Sells*, 477 F.3d at 1237; Wright & Miller § 128.

The difficulty for the government in this particular case is that the difference between the quarterly employment taxes and the trust fund recovery

penalty is not merely a semantic one under our precedent. We have previously

held that the trust fund recovery "penalty is distinct from and in addition to the

employer's liability for [the employment] taxes," *Bradshaw*, 83 F.3d at 1178, and

we are of course bound by that holding. *See also* Michael I. Saltzman*, IRS

Practice & Procedure ¶ 17.06[1] ("Liability for the penalty and the employer's

liability for withholding and employment taxes are separate and distinct, but

related."). Neither does the government in this case offer us any persuasive

reason for a contrary holding. While the ultimate object of the IRS's interest –

recovering the underlying delinquent tax – is undoubtedly the same, the quarterly

employment tax provision of Section 3403 and the trust fund recovery penalty of

Section 6672 provide materially different means for achieving that end. In much

the same way that the traditional equitable law concept of piercing the corporate

veil broadens responsibility for the same liability from the corporation to its

individual officers and directors, but requires a different set of proof and

implicates a different set of defenses in order to do so,[4] employer liability under

_____

[4] Courts and commentators have long referred to the equitable principle of lifting or drawing aside the "thin guise" that is "the veil of corporate entity" to expose the actual individuals "hiding behind" it. I.M. Wormser, *Piercing the Veil of Corporate Entity*, 12 Colum. L. Rev. 496, 504, 499, 497 (1912); *see Fairfield County Tpk. Co. v. Thorp*, 13 Conn. 173, 179 (Conn. 1839). The requirements imposed by the states to justify piercing the veil in corporate law vary and "are virtually limitless, but the courts have repeatedly relied on the presence of certain factors. . . . [T]hree of the most frequently cited factors are (1) undercapitalization; (2) a diversion of funds by the dominant shareholders(s); and (3) the failure to observe corporate formalities." 45 Am. Jur. Proof of Facts

(continued...)

- 15 -

Section 3403 and employee liability under Section 6672 involve different elements and defenses to secure the same pool of money. Liability for quarterly employment taxes extends only to employers, 26 U.S.C. § 3403; *see Slodov*, 436 U.S. at 243, while liability for a trust fund recovery penalty depends on a showing that the defendant was the person responsible for paying over the employer's taxes to the IRS and that the defendant acted with the requisite willfulness in failing to do so, *Bradshaw*, 83 F.3d at 1178; *see Burden v. United States*, 486 F.2d 302, 304 (10th Cir. 1973); Larry Heinkel, *Eliminating IRS Tax Debts*, 82 Fla. B.J. 56, 58 (2008) ("I.R.C. § 6672 is needed to pierce the corporate veil and does so by imposing a civil penalty."). The difference between the two provisions is illuminated by the fact that, when officers or employees contest the assessment of the trust fund recovery penalty against them, they need not (and often do not) debate the employer's liability for the underlying employment taxes but instead contest whether they qualify as "responsible persons" under the statute. *See, e.g.*, *Bradshaw*, 83 F.3d at 1178; *Denbo v. United States*, 988 F.2d 1029, 1032 (10th Cir. 1993). Meanwhile, as here, an individual like Ms. Farr charged for failure to pay quarterly employment taxes allegedly "due and owing by her" may fairly attempt to defend the charge on the basis that she was not the *employer* from

---

[4](...continued)
3d 1 Part C; *see also id.* at § 24 (listing elements of proof, in addition to the liability of the corporation itself, useful for establishing liability of individual defendants for corporate obligations via piercing the corporate veil).

whom the tax was, in fact, due and owing. In this case, however, the government

was allowed to proceed at trial against Ms. Farr not merely on the basis of unpaid

quarterly employment taxes purportedly "due and owing by her," but also on the

basis of the unpaid trust fund recovery penalty, assessed by virtue of her position

as a person responsible for the payment of quarterly employment taxes owed by

the clinic, even though the government never received a grand jury indictment

against her on this latter basis. In a real sense, it is as if Ms. Farr had been

charged first as if she were herself the corporate employer with quarterly tax

liability and then, after the government's witness admitted Ms. Farr was not the

employer and owed no quarterly employment taxes, separately and additionally

charged as a person responsible for the corporation's liabilities under a veil-

piercing theory. Simply put, as the district court aptly observed at sentencing,

Ms. Farr was "charged with evading a tax that [she] never owed and for which

[she] w[as] never assessed" (quarterly employment taxes), and when the

government detected the problem at trial, "it turned out that I had to fix the

indictment in the jury instructions." Aplt. App. # 16.

In reaching the conclusion that the government at trial effected an

impermissible constructive amendment of the indictment, we note that we have no

occasion to pass on the additional – and purely hypothetical – question whether

the government could have proceeded against Ms. Farr under Section 7201 on the

theory that, while the clinic, not she, was the employer, she willfully attempted to

"defeat" payment of the *clinic's* Section 3403 quarterly employment taxes. That is a course the government did not pursue at trial or on appeal before us (neither is it clear whether the government could have pursued such a course under the terms of its indictment in this case: again, the indictment alleged, paradoxically in light of its own witnesses' testimony that the clinic was the employer responsible for payment of quarterly taxes, that quarterly employment taxes "were due and owing by her [i.e., Ms. Farr]"). Likewise, we have no reason to pass on the parties' passing and undeveloped dispute whether Section 7201, rather than Section 7202, is an appropriate vehicle for prosecuting evasion of the Section 6672 trust fund recovery penalty.[5] Instead, we limit our analysis and holding today to the question whether a constructive amendment of the indictment occurred when the government proceeded against Ms. Farr for nonpayment of the trust fund recovery penalty in the face of an indictment that never referenced such a liability.

---

[5] As the government notes, while there is a linguistic distinction between the term "tax" employed in Section 7201 and the term "penalty" used in Section 6672, 26 U.S.C. § 6671 explicitly states that, "[e]xcept as otherwise provided," any Code reference to a "tax" imposed also includes penalties and liabilities such as the trust fund recovery penalty. At the same time, as the defendant notes, Section 7202 may provide a more tailored avenue for prosecution of those who fail to pay Section 6672 assessments: Section 7202 tracks the language of Section 6672 and makes a responsible employee's willful failure to pay a felony punishable by five years in prison and a $10,000 fine. *See* 26 U.S.C. § 7202.

On this dispositive score, our case is very much like *Stirone*. There, the indictment charged the defendant with unlawfully obstructing or affecting interstate commerce – specifically, the importation of sand for the manufacture of cement – by extortion and threats in violation of the Hobbs Act. *Stirone*, 361 U.S. at 213-14. At trial, the district court permitted the government to prove, and instructed the jury, that the affected commerce was either the importation of sand *or* the use of the concrete to construct a mill that would manufacture steel products to be shipped interstate. *Id.* at 214. The Supreme Court held that the evidence and instruction charging interference with steel exports constructively amended the indictment by allowing the jury to convict the defendant for a crime other than that charged in the indictment, interference with sand imports. This amendment, the Court held, "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury" because "it cannot be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Id.* at 217. Similarly, in the case before us, the indictment charged a general crime but specified the way in which it was accomplished – in *Stirone* it was the specific commerce obstructed, and here it was the specific tax evaded. Yet, the evidence and jury instructions at trial introduced to the jury an alternative way in which the crime could have occurred – a different commerce obstructed in *Stirone* and a different tax evaded in this

- 19 -

case.  As in *Stirone*, Ms. Farr's jury was allowed to convict her for a crime (evading the trust fund recovery penalty) different from that charged in the indictment (evading the payment of quarterly employment taxes).  We therefore cannot say with certainty that she was convicted solely on the charge made in the indictment the grand jury returned, as the Fifth Amendment requires.[6]

C

The government responds that Ms. Farr cannot credibly claim to have suffered from a prejudicial lack of notice about the government's intentions.  In doing so, the government rightly observes that Ms. Farr had been assessed the trust fund recovery penalty on the date cited in the indictment in an amount corresponding exactly to the amounts cited in the indictment.  Even so, the question of a prejudicial lack of notice is not so clear cut.  As defense counsel stresses, his primary trial tactic (suggesting that the clinic, not Ms. Farr, was the employer responsible and assessed for paying quarterly employment taxes) was stripped from him very near the end of trial, after he had devoted considerable time to its presentation and development in his opening statement and witness examinations before the jury.  As the district court acknowledged, it is "not an unfair characterization of the situation" to say that counsel was "denied . . . the

---

[6] *See also Hunter*, 916 F.2d at 599 (holding that jury instruction and testimony about digital penetration constructively amended indictment charging defendant with criminal sexual penetration by "sexual intercourse" only).

right to present the defense based on the indictment [the government] g[ave]" him, and which he pursued through much of trial. Aplt. App. # 11 at 114, 115.

More fundamentally still, the prohibition on constructive amendments is grounded not just in the Sixth Amendment's notice requirement but also in the grand jury guarantee of the Fifth Amendment. "As the dual source of the rule makes clear, it protects *both* a defendant's right to be subjected only to charges set by a grand jury and his interests in having sufficient notice." *United States v. Gonzalez-Edeza*, 359 F.3d 1246, 1250 n.1 (10th Cir. 2004). In addition to any Sixth Amendment notice guarantees, the Fifth Amendment right "to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment," *Stirone*, 361 U.S. at 218-19, and it provides a sufficient basis, standing alone, to compel reversal without any further showing of prejudice, *see id.*, 361 U.S. at 217 ("Deprivation of such a basic right is far too serious to be . . . dismissed as harmless error."); *Sells*, 477 F.3d at 1237 (constructive amendment "is reversible per se"); *Apodaca*, 843 F.2d at 428.[7]

---

[7] We acknowledge that in some constructive amendment cases we have loosely invoked the term "harmless error." *See Bishop*, 469 F.3d at 902, 904; *United States v. Tieu*, 279 F.3d 917, 921 (10th Cir. 2002). In reality, however, we declined to reverse convictions in these cases only because the alleged variation from the indictment at trial did not raise the possibility that the defendant was convicted of a crime different from that charged in the indictment – that is, there simply was no conviction under an improperly added charge. *See Tieu*, 279 F.3d

(continued...)

Separately, the government defends its expansion of the indictment on the basis of an unreported district court case which it reads as holding the trust fund recovery penalty "interchangeable" with the quarterly employment taxes, *United States v. Scotto*, 2006 WL 2494430 (S.D.N.Y. 2006). We do not read *Scotto* so sweepingly. Rather, that case illustrates and underscores only how the particulars alleged by the government in each indictment matter, and is a confirmation of our practice, stressed in *Bishop*, of giving meaning to those particulars. There, much as here, the charging paragraph of the indictment charged a Ralph Scotto with evading and defeating "the payroll tax" for certain businesses. *Id.* at *3. But there, very much unlike here, the grand jury's indictment expressly went on to explain and define this charge in terms of the defendant's personal failure to pay the trust fund recovery penalty, stating that

> On or about December 23, 1991, the IRS assessed SCOTTO personally, as a "person required to collect, truthfully account for, and pay over any tax imposed" by the Internal Review Code, 26 U.S.C. § 6672(a), approximately $32,428.98 for unpaid payroll taxes

---

[7](...continued)

at 921 ("Even if we assumed the jury instructions improperly allowed the jury to convict for possession of ammunition, the error was rendered harmless when the district court dismissed the ammunition charge" and the special verdict form showed the jury unanimously convicted defendant for the charged conduct of possessing a firearm.); *Bishop*, 469 F.3d at 904 (special verdict form showed the jury convicted defendant for unlawful possession by virtue of the charged conduct of possessing a pistol as well as the uncharged conduct of possessing a bullet); *cf. Apodaca*, 843 F.2d at 428 ("[N]o constructive amendment arises from the admission of acts not charged in the indictment when the court's instructions to the jury preclude the possibility that the defendant was convicted on those acts.").

withheld from employees of Waterset, an amount known as a Trust Fund Recovery Penalty. . . . SCOTTO has evaded payment of Trust Fund Recovery Penalties totaling approximately $49,663.24 for payroll taxes withheld from employees of Waterset and R3A6 for payment on their behalf to the IRS.

*Id.* at *5-6.  In analyzing this language, the district court observed in the course of denying Mr. Scotto's motion to dismiss the indictment that "[t]he Indictment explains that Scotto, pursuant to 26 U.S.C. § 6672(a), is a person responsible for the unpaid payroll taxes of these two corporate entities. . . .  Scotto is charged as a responsible person pursuant to Section 6672, not as an employer pursuant to Section 3403."  *Id.* at *3, 4.

The *Scotto* court did not purport to hold that the trust fund recovery penalty is, as a matter of law, always and everywhere a synonym for quarterly employment taxes.  Rather, it only held that, as used in the peculiar indictment before it, the use of the term "payroll tax" was not fatal because the document defined that term by express reference to the trust fund recovery penalty:  "the term 'Trust Fund Recovery Penalty' is interchangeable with the language 'payroll tax' charged in Count One of the Indictment and the Indictment is not facially insufficient for the Government's failure to use the term 'Trust Fund Recovery Penalty' in [one charging paragraph], especially since the term was used, and defined, elsewhere in the Indictment."  *Id.* at *5.[8]  We have no quarrel with any

_____

[8]  Further underscoring the unlikelihood that the court meant to equate the

(continued...)

- 23 -

of this. Our difficulty lies simply in the fact that the indictment against Ms. Farr did nothing of this sort, making no reference whatsoever to the trust fund recovery penalty or Section 6672; neither did the government mention the penalty in its responsive pleadings in the district court, including its bill of particulars. While the language of Mr. Scotto's indictment left no doubt that the grand jury charged him with evading the trust fund recovery penalty and afforded him notice that he would be tried for the payroll taxes "as a responsible person pursuant to Section 6672," the same simply cannot be said of Ms. Farr's indictment. And each indictment must be assessed on its own terms.[9]

## III

In addition to challenging the propriety of the charge she faced before the jury, Ms. Farr contends there was insufficient evidence to convict her of that

---

[8](...continued)
term "payroll tax" with "trust fund recovery penalty" as a matter of law for all purposes based merely on Section 6671's statement that the term "tax" in the Code usually also means "penalty," *see Scotto*, 2006 WL 2494430 at *4-5, we note that the trust fund recovery penalty applies to all withholding regimes the Code creates, including various retail and manufacturers' excise taxes, not just payroll employment taxes. *See* IRS Practice & Procedure ¶ 17.06.

[9] The government suggests it might have addressed the problem with its indictment in this case if *Scotto* had been decided earlier, but without the benefit of the case it could not have foreseen the problem. But, while it is surely true that *Scotto* was decided after the indictment in this case, it came only two weeks after the entry of this indictment, over five months before trial began, and the government was of course free to seek a superseding indictment at any time prior to trial.

charge. She presses this separate challenge surely well aware of the "venerable principle of double jeopardy jurisprudence," that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge." *United States v. Scott*, 437 U.S. 82, 90-91 (1978); *see also United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003). In assessing her challenge on this front, however, we are obliged to construe the evidence in the light most favorable to the government, *see United States v. Rakes*, 510 F.3d 1280, 1284 (10th Cir. 2007); in doing so we conclude that the government has adduced ample evidence from which a jury could find Ms. Farr guilty of evading the trust fund recovery penalty, and thus, that no double jeopardy impediment exists to her retrial.

### A

We begin by noting that our ruling on the constructive amendment question does not speak to the question of evidentiary sufficiency, and thus does not implicate double jeopardy concerns. While a ruling that the evidence is insufficient to support a conviction is equivalent to a judgment of acquittal, and any retrial would thus unconstitutionally place the defendant in double jeopardy,[10]

---

[10] The double jeopardy clause provides, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

the government may retry a defendant whose conviction is set aside due to defects in the trial process. S*ee United States v. Burks*, 437 U.S. 1, 16 (1978); *Scott*, 437 U.S. at 91; *Pearl*, 324 F.3d at 1214; *United States v. Dalton*, 990 F.2d 1166, 1168 (10th Cir. 1993) (discussing *Montana v. Hall*, 481 U.S. 400 (1987)). The constructive amendment error we have identified in Ms. Farr's trial falls firmly in this latter category.

The point of the double jeopardy clause is to prevent retrial on a charge of which the defendant has been effectively acquitted (and to prevent second punishment for a crime for which the defendant has already been punished, a problem happily not at issue here). *See Hall*, 481 U.S. at 403-04 & n.1. An erroneous constructive amendment, however, does nothing to imply an insufficiency in the evidence to support the jury's verdict convicting Ms. Farr of violating Section 7201, at least by evading the trust fund recovery penalty. Accordingly, "[p]ermitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording [her] an opportunity to 'obtain a fair reajudication of [her] guilt free from error,'" *Lockhart v. Nelson*, 488 U.S. 33, 42 (1988) (quoting *Burks*, 437 U.S. at 15), and serves society's "valid concern for insuring that the guilty are punished," *Burks*, 437 U.S. at 15. In this respect, a reversal for the introduction of a constructive amendment is akin to a reversal for the "incorrect receipt or rejection of evidence," in that, while exposing an error in

the trial process in need of correction, it "implies nothing with respect to the guilt or innocence of the defendant," *Dalton*, 990 F.2d at 1168 (quoting *Lockhart*, 488 U.S. at 40). We note that a sister circuit has reached exactly this conclusion in the constructive amendment context, *see United States v. Mize*, 820 F.2d 118, 119-120 (5th Cir. 1987), as have we previously, if perhaps only by implication, *see Hunter*, 916 F.2d at 600 (remanding case for retrial, without discussion, after reversing the conviction due to constructive amendment).

B

Turning directly to Ms. Farr's sufficiency challenge, and thus whether a retrial would expose her to impermissible double jeopardy, we consider whether sufficient evidence was introduced at trial to support the verdict the jury rendered, *Scott*, 437 U.S. at 90-91; *Hall*, 481 U.S. at 403-04; *Lockhart*, 488 U.S. at 40-42; *Dalton*, 990 F.2d at 1168, and thus in this case whether a violation of Section 7201 occurred, either by evasion of the quarterly employment taxes or the trust fund recovery penalty. Viewing the facts in the light most favorable to the government, we cannot help but conclude that the government presented sufficient evidence from which the jury could find that Ms. Farr (1) owed a substantial tax liability, at least in the form of the trust fund recovery penalty; (2) acted willfully; and (3) committed an affirmative act of evasion or attempted evasion. *See United States v. Thompson*, 518 F.3d 832, 850 (10th Cir. 2008).

The evidence at trial showed that Ms. Farr was the employee responsible for withholding and paying over to the government the quarterly employment taxes of ATHA-Genesis during 1999 when the clinic did not pay those taxes; that Ms. Farr was assessed the trust fund recovery penalty in relation to those taxes but did not pay the penalty; and that Ms. Farr did not have bank accounts or assets in her own name but used a corporate account as her own and directed her children to buy and sell assets on her behalf during this time period.

Before us, Ms. Farr challenges only the government's evidence on the third element of the crime, namely the existence of an affirmative act of evasion or attempted evasion.[11] "An affirmative act requires more than the passive failure to file a tax return; it requires a positive act of commission designed to mislead or conceal. The government only needed to show one affirmative act of evasion for each count of tax evasion." *Thompson*, 518 F.3d at 852 (internal citation and quotations omitted). At trial, the government introduced evidence that Ms. Farr had no bank accounts in her own name but instead incorporated Trinity

---

[11] In a footnote, Ms. Farr also asserts that there was insufficient evidence to support the first element of the crime because, as she asserted in her argument for reversal, she did not personally owe the quarterly employment taxes of ATHA-Genesis. We need not pass on this argument because sufficient evidence showed that she at least owed the trust fund recovery penalty, which is, as we have already explained in footnote 5, also a "substantial tax liability." *See* 26 U.S.C. § 6671. To the extent that she challenges the use of Section 7201 rather than Section 7202 to prosecute her failure to pay a Section 6672 liability, that question does not pertain to evidentiary sufficiency but is a question of law we have left open. *See supra* Part II.B.

Consulting and Management Company ("Trinity") in 2000 and established a bank account in Trinity's name, with her children as the signators, which she then used as her personal account. Ms. Farr deposited nearly $49,000 in checks made to her personally, such as salary, into the Trinity account in 2001 and 2002. She then had her children sign blank Trinity checks which she would, in her own hand, fill in and use for personal expenses such as lease payments on her Jaguar, utilities, credit card payments, and the like. In addition, the evidence showed that nearly $47,000 was paid directly to Ms. Farr out of the Trinity account. Ms. Farr does not dispute that this evidence was properly before the jury, only the inference that use of the Trinity account as her personal account was anything but innocent. The jury was free to draw reasonable inferences from the evidence before it, and this evidence was more than sufficient to allow an inference that Ms. Farr's use of the Trinity account was "a positive act of commission designed to mislead or conceal." *Thompson*, 518 F.3d at 852.[12]

---

[12] Because we have resolved this appeal without the need to consider the items in the government's addendum to its supplemental appendix, we dismiss Ms. Farr's motion to strike it as moot. We deny Ms. Farr's motion to strike the government's entire answer brief. Because we reverse Ms. Farr's conviction on the basis of an unconstitutional constructive amendment, we also have no need to consider her alternative challenge that the district court's contested jury instruction equating quarterly employment taxes and the trust fund recovery penalty impermissibly directed the jury that the government had proven the first essential element of Section 7201 (a substantial tax liability), except to note that it, too, does not implicate the sufficiency of the evidence against her and thus could not bar retrial.

* * *

The quarterly employment taxes of ATHA-Genesis specified in the indictment against Ms. Farr are not, as the government argues, synonymous with the trust fund recovery penalty assessed against Ms. Farr. Because the indictment specifically charged evasion of quarterly employment taxes but the evidence and jury instructions at trial allowed the jury to convict Ms. Farr for evading the – substantively different – trust fund recovery penalty, the district court proceedings unconstitutionally broadened the basis for conviction, constructively amending the indictment. At the same time, however, the government's evidence at trial was legally sufficient to convict Ms. Farr for tax evasion and thus no double jeopardy impediment exists to her retrial under a properly framed indictment.

*Reversed and Remanded.*