**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

ARTURO CRUZ-RODRIGUEZ,

  Defendant - Appellant.

No. 07-4083

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:06-CR-00504-TS)**

---

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Elizabethanne C. Stevens, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **O'BRIEN**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

Defendant-Appellant Arturo Cruz-Rodriguez was charged with one count of illegal reentry by a previously deported alien in violation of 8 U.S.C. § 1326. He was convicted by a jury and sentenced to seventy-seven months' imprisonment. He appeals his

conviction on the ground that the district court impermissibly expanded the scope of the indictment. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that this argument was waived and **AFFIRM** the district court's judgment.

## I. BACKGROUND

In July 2006, Mr. Cruz-Rodriguez approached a federal immigration agent who was investigating reports of destitute illegal aliens residing in a neighborhood of Salt Lake City, Utah. In heavily accented, broken English, he asked the agent why the police were asking questions and arresting people. The agent asked him where he was born, and Mr. Cruz-Rodriguez replied that he was born in Los Angeles. Mr. Cruz-Rodriguez was unable to satisfactorily answer follow-up questions or produce any identification. He began to walk away. Then, when Mr. Cruz-Rodriguez was told to stop, he began to run. He was apprehended, and, although Mr Cruz-Rodriguez maintained that he was a U.S. citizen, a fingerprint check revealed that he had an alien registration number and had been previously deported to Mexico.

A grand jury returned a one-count indictment, charging Mr. Cruz-Rodriguez as follows:

> On or about July 10, 2006, in the CENTRAL Division of the District of Utah, ARTURO CRUZ-RODRIGUEZ, aka ARTURO CISNEROS-CASARES, the defendant herein, an alien who *on or about May 31, 2002*, was excluded, removed, and deported from the United States, was knowingly present and was found in the United States in the District of Utah, having not obtained the consent of the Attorney General of the United States and the Secretary of the United States Department of Homeland Security to reapply for admission into the United States; all in violation of Title 8, United

-2-

States Code, Section 1326.

R., Vol. I, Doc. 1, at 1-2 (Indictment, dated July 19, 2006) (emphasis added).

In preparation for trial, the government submitted proposed jury instructions and a trial brief. Relevant here, Proposed Instruction No. 5 stated in part: "I[f] you find that the defendant was deported from the United States at any time prior to July 10, 2006, the [prior deportation] element [of the offense] is met." R., Vol. I, Doc. 17, at 8 (Government's Proposed Jury Instructions, filed Dec. 26, 2006). In its trial brief, the government explained that it would prove that Mr. Cruz-Rodriguez had previously been deported by introducing documents from his "A-file," the official record maintained by Immigration and Customs Enforcement ("ICE") of an alien's contacts with federal immigration officials or contacts with state or federal law enforcement. These documents related to deportations in 1988, 1993, 1997, and 2002. Furthermore, an expert witness would testify that Mr. Cruz-Rodriguez's fingerprints matched a warrant of deportation dated May 20, 2002, from the A-file.

Mr. Cruz-Rodriguez filed an objection to Proposed Instruction No. 5 and a motion in limine seeking exclusion of the May 20, 2002, warrant of deportation. He argued that the effect of the jury instruction was "to sever the date of deportation alleged in the indictment, May 31, 2002, from the Jury's consideration" and that this instruction "impermissibly expands the potential evidence considered by the jury to a period of almost twenty years." R., Vol. I, Doc. 26, at 1-2 (Objection to Government's Jury Instruction No. 5, filed Jan. 4, 2007). The motion in limine argued that irregularities in

the warrant of deportation made it unreliable and that, for this reason, it should not be admitted under Federal Rule of Evidence 803(8), the public records exception to the hearsay rule. The district court rejected Mr. Cruz-Rodriguez's arguments regarding the alleged irregularities, stating that the warrant of deportation "is admissible under the public record exception of Fed. R. Evid. 803(8)." R., Vol. I, Doc. 30, at 1-2 (Mem. Decision and Order Denying Def.'s Mot. in Limine, filed Jan. 4, 2007). The district court overruled the objection to Proposed Instruction No. 5 on the grounds that the date of the deportation is not an element of the offense.

Before voir dire, the district court inquired whether there were any concerns about the jury instructions it intended to use. Counsel for Mr. Cruz-Rodriguez replied that he did not "anticipate any concerns," but he asked for an opportunity for "the benefit of the record just to clarify the earlier objections that the Court has ruled on." R., Supp. Vol. VI, Tr. at 5 (Jury Trial, dated Jan. 5, 2007). He stated that "[w]e don't plan on objecting during the course of the trial since the Court has made a final ruling on that," but also stated that he would continue to object to the admission of the warrant of deportation and objected "just for the benefit of the record" to Proposed Jury Instruction No. 5. *Id.* at 5-7.

In his opening statement, counsel for Mr. Cruz-Rodriguez conceded that Mr. Cruz-Rodriguez had been previously deported, telling the jury that the only argument would be over whether the government had proved he was not a citizen or national of the United States. After opening statements, the parties entered into a factual stipulation agreeing, *inter alia*, to the following fact: "Defendant was deported on June 10, 1988, March 8,

-4-

1993, January 24, 1997, and May 31, 2002." R., Supp. Vol. VII, at 1 (Stipulation of Fact, dated Jan. 5, 2007). Through counsel, Mr. Cruz-Rodriguez agreed that the jury instructions could be amended to state that because the parties had stipulated to these facts, the jury "must consider [the prior-deportation element] proven." R., Vol. III, Tr. at 27 (Jury Trial, dated Jan. 5, 2007).

When the district court provided the parties with revised jury instructions, counsel for Mr. Cruz-Rodriguez replied, "I agree with the verdict form and the instructions that have been offered." *Id.* at 106. Accordingly, the district court instructed the jury that the first element the government needed to prove was that "the defendant was an alien at the time of the offense alleged in the Indictment." R., Vol. I, Doc. 38, at 21 (Jury Instructions, dated Jan. 9, 2007). Furthermore, the district court instructed the jury that the second element the government must prove is that "prior to the time of the offense alleged in the Indictment, the defendant had been removed or deported from the United States. The parties have stipulated that this element is proved and you must consider it proven." *Id.* at 18, 22. The jury returned a guilty verdict.

Mr. Cruz-Rodriguez was sentenced to seventy-seven months' imprisonment, followed by thirty-six months of supervised release, and a mandatory $100 special assessment fee. The district court entered judgment, and Mr. Cruz-Rodriguez timely filed a notice of appeal.

## II. DISCUSSION

On appeal, Mr. Cruz-Rodriguez argues that the jury instructions constructively

-5-

amended the indictment, creating the possibility that the jury convicted him of a crime with which he was not charged. This argument is not without force. *See United States v. Bishop*, 469 F.3d 896, 902 (10th Cir. 2006) (holding that "[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars," and the charged particular becomes "an essential element of the indictment"), *abrogated in part on other grounds by Gall v. United States*, 552 U.S. 38 (2007); *cf. United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 n.1 (10th Cir. 2004) (noting that the prohibition on constructive amendments "protects *both* a defendant's right to be subjected only to charges set by a grand jury and his interests in having sufficient notice").[1] The right to be free from constructive amendments is fundamental.

> The prohibition on constructive amendments is derived from (1) the Fifth Amendment which limits a defendant's jeopardy to offenses charged by a grand jury, and (2) the Sixth Amendment which guarantees the defendant notice of the charges against him. A constructive amendment occurs when the Government, through evidence presented at trial, or the district court, through instructions to the jury, broadens the basis for a defendant's conviction beyond acts charged in the indictment. To constitute a constructive

---

[1] In overruling Mr. Cruz-Rodriguez's constructive-amendment argument the district court relied upon the reasoning of our unpublished decision in *United States v. Cruz*, 189 F. App'x 725 (10th Cir. 2006). There, we rejected such an argument on the grounds that the defendant "failed to show that the exact date of deportation is an element of the crime" and provided "no authority to support [this] contention." *Id.* at 727. *Cruz* of course is not binding on us here. Moreover, *Cruz* also did not have the benefit of *Bishop*, having been decided approximately four months prior. And it did not address *Bishop*'s reasoning, which conferred upon particulars charged in an indictment the status of elements of the offense. *See Bishop*, 469 F.3d at 902. It is unlikely that the constructive amendment holding of *Cruz* survives *Bishop*. However, because *Cruz* is not binding authority, we need not endeavor to resolve this issue. Suffice it to say, *Bishop* supplies the analytic framework that guides us here.

amendment, the district court proceedings must modify an essential element of the offense or raise the possibility that the defendant was convicted of an offense other than that charged in the indictment. Where an indictment properly pleads violation of a statute, and the defendant was not misled about the nature of the charges, his substantive rights are not prejudiced.

*United States v. Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002) (citations omitted); *United States v. Farr*, 536 F.3d 1174, 1179-80 (10th Cir. 2008).

The indictment in the instant case charged Mr. Cruz-Rodriguez with one specific prior deportation—that of May 31, 2002. The jury instructions, however, only required proof of a deportation "prior to the time of the offense alleged in the Indictment," and did not require the jury to specify the prior deportation upon which it would rest its finding. R., Vol. I, Doc. 38, at 22; *see* R., Vol. I, Doc. 36, at 1 (Verdict Form, dated Jan. 5, 2007). Indeed, the instructions relieved the jury of the obligation to make any finding on the prior-offense element. In light of Mr. Cruz-Rodriguez's stipulation to the fact of all four prior deportations proffered by the government, including significantly the one charged in the indictment, the district court directed the jury in the instructions that it "must consider [the prior-offense element] proven." R., Vol. III, Tr. at 27.

Although *Bishop* does raise serious doubts about whether the district court's instructions conformed to the law, we do not reach the merits of Mr. Cruz-Rodriguez's constructive-amendment argument. We conclude that he waived appellate review of this argument by his intentional litigation decisions before the district court. More specifically, Mr. Cruz-Rodriguez's stipulation to the fact of his prior deportations,

-7-

including notably the one charged in the indictment, and his subsequent agreement to the court's instructions waived his argument regarding constructive amendment of the indictment.

Because the parties dispute the standard of review that should apply, we believe it is necessary to distinguish between issues involving waiver, which do not receive appellate review, and those involving forfeiture, which we review for plain error. "Waiver is the intentional relinquishment or abandonment of a known right," whereas "forfeiture is the failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted); *see United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 2034 (2009); *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006).

In other words, "'waiver is accomplished by intent, but forfeiture comes about through neglect.'" *Zubia-Torres*, 550 F.3d at 1205 (alteration omitted) (quoting *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007)). Waiver occurs when a party deliberately considers an issue and makes an intentional decision to forgo it. *Zubia-Torres*, 550 F.3d at 1206; *see Carrasco-Salazar*, 494 F.3d at 1271-73 ("There can be no clearer intentional relinquishment or abandonment of a known right than when the court brings the defendant's prior objection to his attention, asks whether it has been resolved, and the defendant affirmatively indicates that it has." (citations and internal

quotation marks omitted)).[2]  Moreover, the waiver doctrine has been applied in situations of invited error.  *See, e.g., Teague*, 443 F.3d at 1315-16 (rejecting the defendant's challenge to the conditions of his supervised release because he had proposed them through counsel and personally agreed to them at his sentencing);  *United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir.) (rejecting the defendant's claims of misjoinder because his two cases had been tried together at his request), *reh'g granted in part on other grounds*, 88 F.3d 897 (10th Cir. 1996); *see also Zubia-Torres*, 550 F.3d at 1205 (noting that, *inter alia*, "[t]here is nothing in the record to suggest that counsel actually identified the issue related to Mr. Zubia-Torres's sentencing enhancement" and "invited the court to make the particular error").  In sum, as we recently observed, "[w]e typically find waiver in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below." *Zubia-Torres*, 550 F.3d at 1205.

---

[2]     For example, in *Zubia-Torres* we determined that a defendant forfeited, rather than waived, his challenge to a sixteen-level enhancement under the U.S. Sentencing Guidelines, when the defendant stated through counsel that his Guidelines offense level was correctly calculated but had never previously challenged the sixteen-level enhancement.  *Zubia-Torres*, 550 F.3d at 1204-07.  There was no evidence that the defense counsel "actually identified" or "deliberately considered" the sixteen-level enhancement issue before making the general statement accepting the PSR computation. *Id.* at 1205-06.  Accordingly, that statement was insufficient to establish that the defendant waived the sixteen-level enhancement argument.  *Id.* at 1205; *see United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006) (holding that defendant's statement through counsel that he had no problem with the PSR did not waive his right to later challenge the computation of his criminal history score when there was no evidence that the defendant "knew of the sentencing guidelines issue and that he consciously chose to forego it").

As for the availability of appellate review, we have held that "a party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is *not* entitled to appellate relief." *Carrasco-Salazar*, 494 F.3d at 1272 (emphasis added) (internal quotation marks omitted). Thus, "[e]rrors that are waived rather than merely forfeited through failure to object are not subject to plain error review." *Hardwell*, 80 F.3d at 1487.

Mr. Cruz-Rodriguez intentionally adopted a litigation position that was fundamentally inconsistent with his constructive-amendment objection to the jury instruction. Viewed as a whole,[3] his litigation position effected a waiver of Mr. Cruz-Rodriguez's constructive-amendment appellate challenge. In other words, Mr. Cruz-Rodriguez gave up his right to appellate review of this challenge under any standard of review—plain or otherwise.

Mr. Cruz-Rodriguez's initial objection to the government's proposed jury instruction was animated by the concern that the instruction would authorize the jury to predicate its finding concerning the prior-deportation element on allegedly improper grounds—that is, the uncharged (i.e., extra-indictment) prior deportations. However, the effect of Mr. Cruz-Rodriguez's intentional litigation decisions was to permit the jury to do precisely that. Indeed, they resulted in the jury being relieved of the obligation of

---

[3]     We need not decide here whether Mr. Cruz-Rodriguez would have waived his constructive-amendment challenge solely by the act of agreeing to the court's instructions, which permitted the jury to consider the uncharged (i.e., extra-indictment) prior deportations and directed the jury to deem the prior-deportation element of the offense proven.

making any finding on this element at all.

Stipulations are evidentiary. *See United States v. Hawkins*, 215 F.3d 858, 860 (8th Cir. 2000) ("A stipulation is an agreement between the parties as to a fact of the case, and, as such, it is evidence introduced by both of the parties."). "Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U.S. 753, 755 (2000); *cf.* 1 Kenneth S. Broun, *McCormick on Evidence* § 55, at 281 (6th ed. 2006) ("If a party who has objected to evidence of a certain fact himself later produces affirmative evidence of the same fact from his own witness, he has waived his earlier objection.").

A stipulation "by its very nature signals the intentional relinquishment of any and all rights to challenge the admissibility of the stipulated evidence, [and] is a clear example of waiver if anything is." *United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004); *see* 9 John Henry Wigmore, *Evidence* § 2590, at 822 (James H. Chadbourn rev., 1981) ("The vital feature of a [stipulation] is universally conceded to be its *conclusiveness* upon the party making it, i.e., the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it.").[4]

Therefore, one immediate effect of Mr. Cruz-Rodriguez's stipulation was that he

---

[4] We acknowledge that one must carefully examine the nature of any stipulation and its surrounding circumstances in making a judgment concerning what (if any) waiver has been effected. *See, e.g.*, 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5039.5, at 857-58 (2d ed. 2005) (suggesting that "to say that a stipulation is a 'waiver' is much too facile; much depends on the circumstances of the case—including the nature of the stipulation"—and noting the obvious example where the stipulation itself provides that it is not a waiver).

-11-

lost the right to challenge the fact of his extra-indictment prior deportations (i.e., the fact that he was actually deported on those occasions). If that had been the full extent of his conduct, we would not necessarily be situated to declare his constructive-amendment challenge waived. Mr. Cruz-Rodriguez still would have been situated under his legal theory of the case to challenge the admissibility of those prior deportations, given that they were not charged in the indictment.

But Mr. Cruz-Rodriguez did not stop there. Mr. Cruz-Rodriguez's stipulation also encompassed the May 31, 2002, prior deportation. By virtue of that stipulation, Mr. Cruz-Rodriguez gave up the right to contest the occurrence of the only prior deportation that *was* charged in the indictment—the only one that he conceded could support his illegal-reentry conviction. And then there was more. Mr. Cruz-Rodriguez proceeded to accept the propriety of the court's jury instructions, which allowed the jury to consider all of the prior deportations tendered by the government, including the charged one, *and* instructed the jury that (in light of the parties' stipulation) it must deem the prior-deportation element proven.

On these facts, it is patent that, viewed as a whole, Mr. Cruz-Rodriguez's intentional litigation conduct—which included entering into an all-encompassing stipulation as to prior deportations, including significantly the one charged in the indictment, and agreeing to a jury instruction that allowed consideration of the prior deportations and deemed the prior-deportation element of the offense to be proven—effected a waiver of any challenge that Mr. Cruz-Rodriguez may have had to the

alleged constructive amendment of his indictment. Indeed, this is tantamount to the classic waiver situation where a party "actually identified the issue," "deliberately considered" it, and then affirmatively acted in a manner that "abandoned any claim" on the issue. *Zubia-Torres*, 550 F.3d at 1205-06.[5]

Notwithstanding Mr. Cruz-Rodriguez's arguments to the contrary, Aplt. Opening Br. at 18, it was not the prosecutor's acts that deprived the jury of the ability to decide his guilt based *solely* on the May 31, 2002, deportation. Rather, this outcome was an ineluctable consequence of Mr. Cruz-Rodriguez's intentional litigation decisions, including his stipulation to the fact that he had been deported four times—one being the deportation of May 31, 2002, which was charged in the indictment. Mr. Cruz-Rodriguez agreed with the district court that the stipulation not only established the fact of the matter, but also meant that the jury "must consider [the prior-deportation element] proven." R., Vol. III, Tr. at 27. The trial proceeded on that understanding, with counsel for both parties and the district court repeatedly referencing the fact that the trial involved only the alienage element of the charged offense. *See Aptt*, 354 F.3d at 1281 ("Thus, the parties' and the court's conduct demonstrate that the stipulation was a stipulation not only in name, but also in action and effect."). The government used the 1988, 1993, and 1997 deportations solely to buttress the alienage element.

---

[5] Assuming *arguendo* that Mr. Cruz-Rodriguez's agreement concerning the jury instruction could be deemed to have led the district court to commit error under *Bishop*, *see supra* note 1, then Mr. Cruz-Rodriguez also would have effected a waiver of his constructive-amendment challenge under the other paradigmatic basis for a finding of waiver—that is, invited error. *See, e.g.*, *Zubia-Torres*, 550 F.3d at 1205.

Mr. Cruz-Rodriguez protests that because his objections to the introduction of alternative deportation dates were overruled, he "was forced to proceed with an alternative defense strategy centered upon the issue of Mr. Cruz-Rodriguez's status as a United States citizen." Aplt. Reply Br. at 10. Mr. Cruz-Rodriguez reasons that proceeding with his original strategy of challenging the validity of the one deportation listed in the indictment "no longer made any strategic sense at trial, and would only have wasted the court's and the jury's time" because the jury was authorized to predicate his guilt on any of the prior deportations tendered by the government. *Id.* at 11. Therefore, according to Mr. Cruz-Rodriguez, his stipulation was an effort to "simplify issues at trial" and "sav[e] the time and effort of the court and jury in considering an issue which ha[d] been rendered irrelevant by the district court's prior ruling." *Id.*

Parties are free to adjust their litigation strategy in light of a trial court's rulings. *See, e.g.*, *United States v. Rios*, 611 F.2d 1335, 1339 n.4 (10th Cir. 1979) (noting that, "without waiving his earlier objection or his right to complain of hearsay testimony already admitted over objection," defense counsel could cross-examine or introduce other evidence contrary to the theory of the objection because "counsel was entitled to treat this ruling as the law of the case"). However, they must act with care because we will not relieve them of the consequences of such litigation choices. Mr. Cruz-Rodriguez was not forced to enter into the stipulation concerning prior deportations; still less was he obliged to remove the entire prior-deportation element of the offense from the jury's

consideration by agreeing to the court's instruction.[6] As the Supreme Court has observed, "both the Government and the defendant in a criminal trial must make choices as the trial progresses" and "there is nothing 'unfair'. . . about putting [defendant] to [his] choice in accordance with the normal rules of trial." *Ohler*, 529 U.S. at 757, 759. Accordingly, we conclude that Mr. Cruz-Rodriguez has waived his challenge to the alleged constructive

---

[6]     Indeed, there appear to have been options available to Mr. Cruz-Rodriguez that he could have employed—but was *not* obliged to employ—to further the goals of efficiency and clarity of case presentation *short of* stipulating to all four prior deportations, including significantly the one charged in the indictment, and agreeing that the jury need not consider the prior-deportation element of the offense. Mr. Cruz-Rodriguez could have stipulated to the *fact of* the prior deportations *other than* the one charged in the indictment and lodged a continuing objection to the evidentiary use of these deportations on the grounds that they were not charged in the indictment and, thus, (under his theory of the case) legally irrelevant. Then, Mr. Cruz-Rodriguez could have required the government to carry its burden of proof on the charged deportation. In that regard, Mr. Cruz-Rodriguez could have waited until the government sought to introduce the May 20, 2002, warrant of deportation and re-urged his objection to the regularity of the document by simply noting that his objection was "for the reasons stated earlier." Furthermore, without disruptive continual efforts, Mr. Cruz-Rodriguez could have adhered to his objection to the substance of the instruction that allowed the jury to consider his guilt based on the extra-indictment prior deportations—the government's Proposed Jury Instruction No. 5. *See, e.g.*, *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 n.5 (10th Cir. 1998) (holding that, although no objection was raised when the court asked if there were any objections to the jury instructions, where a party objected to the jury instructions at the final pretrial conference and reiterated concern at the jury instruction conference, the Court "believe[d] a fair reading of the colloquy between court and counsel indicates that both believed her objections were on the record"). We believe that such an approach ordinarily would result in minimal jury distraction, and, if Mr. Cruz-Rodriguez had used something like it, he likely could have avoided having his appellate challenge defeated by the waiver doctrine. Indeed, through counsel, Mr. Cruz-Rodriguez expressed the intention before voir dire of taking a somewhat similar path. He stated that "[w]e don't plan on objecting during the course of the trial since the Court has made a final ruling on that [i.e., the challenge to the May 20, 2002, deportation warrant]," but he also stated that he would continue to object to the admission of the warrant of deportation and object "just for the benefit of the record" to Proposed Jury Instruction No. 5. R., Supp. Vol. VI, Tr. at 5-7.

amendment of the indictment.

### III.  CONCLUSION

Because we hold that Mr. Cruz-Rodriguez waived his constructive-amendment argument, and he has raised no other arguments on appeal, we **AFFIRM** the district court's judgment.