**UNITED STATES COURT OF APPEALS**

March 25, 2011

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

WILLIAM JAMES RUCKER,

      Defendant - Appellant.

No. 10-1152
(D.C. No. 1:09-CR-00262-PAB-1)
(D. Colo.)

### ORDER AND JUDGMENT[*]

Before **O'BRIEN**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

William James Rucker appeals from a felon in possession of a firearm conviction.

18 U.S.C. § 922(g). He claims his indictment was constructively amended as the

instructions permitted the jury to convict him for possession of "any firearm" even

though the indictment precisely described the weapon. (R. Vol. 3 at 444.) The

government disagrees and also argues Rucker waived this issue at trial. We reject the

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

waiver argument but affirm on the merits.[1]

## I.    BACKGROUND

In the early morning hours of May 11, 2009, Dorothy Leath was working as the night attendant at a hotel in Colorado Springs, Colorado.  After cleaning the lobby area around 3:00 a.m. – there had been no customers since approximately 11 p.m. –she heard a knock on the front door of the hotel.  She admitted a man and a woman.  The woman presented her identification for registration and the couple went to their appointed room. Around 5:30 a.m., Leath was preparing the morning coffee when she noticed a purple Crown Royal bag on a table.  Looking inside, she discovered a handgun.  She called the Colorado Springs police and reported what she found.

Officer Josh Carrier was the first to respond.  Leath gave him the bag with the gun and informed him the hotel had a surveillance camera recording the activity in the lobby. Carrier returned to his squad car, called for a supervisor and ran a check on the gun's serial number.  He discovered the gun had been reported stolen.  Carrier then returned to the lobby with Officer Brian Gurule who had arrived while Carrier was performing the gun check.  The officers were given the surveillance tape but there was no viewing equipment at the hotel.

Leath told the officers she believed the gun arrived with a couple who had checked in early that morning.  Carrier, Gurule and their supervisor, Sergeant Jeffcoat, went to couple's room to question them about the bag and gun.  Rucker answered the door after

---

[1] Our jurisdiction arises under 28 U.S.C. § 1291.

several knocks by the officers.  When questioned, both Rucker and his female companion denied knowing anything about the gun.  The officers, with the occupants' consent, quickly searched the room.  Finding nothing, they left.

Jeffcoat and Carrier returned to the police station to view the surveillance tape while Gurule remained parked across the street from the hotel.  Gurule called Carrier to inform him that Rucker and his companion had left the hotel and were driving away.  At the same time, Carrier confirmed the tape showed Rucker entering the hotel with the bag.  Carrier told Gurule to stop and arrest Rucker.

After confirming Rucker had been previously convicted of several felonies, Carrier telephoned Agent Michael Shaw at the Bureau of Alcohol, Tobacco and Firearms to notify him of a possible federal violation.  Eventually, a superseding indictment issued against Rucker stating:

> On or about May 11, 2009, in the State and District of Colorado, the defendant, WILLIAM JAMES RUCKER, having been previously convicted of crimes punishable by imprisonment by a term exceeding one year, did unlawfully and knowingly possess a firearm, to wit: a Smith & Wesson, Model M 60-7, .38 S.&W. SPL revolver, in and affecting interstate commerce.

(R. Vol. 1 at 119.) (emphasis added).)

Prior to, and during Rucker's trial, both the government and defense counsel had discussions regarding the jury instructions.  Relevant to this appeal, both sides agreed to Instruction 13, the elements instruction, which was given to the jury.  Instruction 13 stated:

> The defendant is charged with a violation of 18 U.S.C. 922(g)(1).  This law makes it a crime for any person who has been previously convicted in any

court of a felony who knowingly possessed <u>any firearm</u> in or affecting interstate commerce.  To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1, The defendant knowingly possessed <u>a firearm</u>.

2, The defendant was convicted of a felony; that is, a crime punishable by imprisonment for a term exceeding one year before he possessed the firearm; and

3, Before the defendant possessed the firearm, the firearm had moved at some time from one state to another.

The term firearm means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term firearm also includes the frame or receiver of any such weapon or any firearm muffler or firearm silencer or destructive device.

(R. Vol. 3 at 443-44) (emphasis added).)  The jury found Rucker guilty and the court sentenced him to 210 months imprisonment.

## II.    DISCUSSION

Rucker now argues the particulars of the gun detailed in the indictment became an element of his crime.  Therefore, the government must prove (1) the gun admitted into evidence was a "Model M 60-7," rather than a "Model 60-7;" (2) it had the designation "S.&W.;" and (3) "SPL" meant "special."  Because it failed to do so, the indictment was constructively amended.  According to Rucker, the jury was permitted to convict him without determining beyond a reasonable doubt the gun presented at trial was the same gun described in the indictment.  In addition, he claims the court omitted an essential element of the offense when it did not include the indictment's description of the weapon in Jury Instruction 13.  Before we can address Rucker's arguments however, we must consider the government's claim that Rucker waived them at trial.

- 3 -

A.    Waiver

"Waiver is the intentional relinquishment or abandonment of a known right, whereas forfeiture is the failure to make the timely assertion of a right."  *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) (quotations omitted).  Because waiver is a matter of deliberate intent, a waived issue is not subject to appellate review. *Id*.  In contrast, an issue that was not objected to out of neglect is forfeited and is subject to plain error review on appeal.  *Id*.

The government argues defense counsel's acquiescence to Jury Instruction 13 during several discussions with the court thereby waiving Rucker's current objection to the instruction.  The government also points to an instance where, when discussing defense counsel's request for a unanimity charge on Rucker's prior felony convictions, the court mentioned such an instruction would not be necessary if there were more than one gun at issue.  While the government points to numerous opportunities where defense counsel could have objected to Jury Instruction 13, it does not point to any deliberate decision to forego a claim based on a constructive amendment.

Neither did Rucker abandon an issue previously raised.  In *Cruz-Rodriguez* we concluded defense counsel had waived the argument that a prior deportation date stated in the indictment should have been included in the jury charge.  *Id*. at 1185-86.  But there, counsel actually raised the argument to the court and his objection was overruled. *Id*. at 1180-81.  Counsel's subsequent stipulation to the same element as proven intentionally removed that issue from the jury's consideration.  Therefore, the argument was waived when counsel abandoned the basis of his objection.  *Id*. at 1185.

- 4 -

The record here is more like the record in *United States v. Zubia-Torres*, 550 F.3d 1202 (10th Cir. 2008). There, the government argued counsel's agreement at sentencing that the guideline range was properly calculated was sufficient to waive a later claim the defendant's sentencing enhancement was inappropriate. We rejected the argument, noting "[t]here is nothing in the record to suggest that counsel actually identified the issue . . . and either invited the court to make the particular error or abandoned any claim that the enhancement did not apply." *Id.* at 1205.

As in *Zubia-Torres*, Rucker's counsel "did not consciously choose to forego the argument, but rather . . . [he] failed to recognize the argument." *Id.* (quotations and citation omitted). Therefore, we will review Rucker's claim under a plain error standard, which requires Rucker to demonstrate:

> (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Davis*, -- F.3d --. No. 09-3010, 2011 WL 668117, at *7-*8 (10th Cir. Feb. 25, 2011).

B.    Constructive Amendment

The Fifth Amendment, which provides in part, that "[n]o person shall be held to answer for . . . [an] infamous crime, unless on a presentment or indictment of a Grand Jury," U.S. CONST. amend. V, and the Sixth Amendment, which guarantees a defendant notice of the charges against him, prohibits constructive amendment of an indictment. *See United States v. Hien VanTieu*, 279 F. 3d 917, 921 (10th Cir. 2002). "Constructive

amendment occurs when proceedings in district court, such as the evidence admitted or the instructions provided to a jury, broaden the basis for a defendant's conviction beyond acts charged in the indictment." *United States v. Bishop*, 469 F.3d 896, 902 (10th Cir. 2006) (quotations omitted) *abrogated on other grounds by Gall v. United States*, 552 U.S. 38 (2007)). "The proceedings must modify an essential element of the defense or raise the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Id*. (quotations omitted). "If an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." *Id*. (citation omitted). One test to determine constructive amendment is whether a defendant could be exposed to double-jeopardy, *i.e.*, a second trial based on the same possession. *United States v. Hamilton*, 992 F.2d 1126, 1130 (10th Cir. 1993).

"A constructive amendment . . . is reversible per se." *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007). But a "simple variance[,] [which] arises when the evidence adduced at trial establishes facts different from those alleged in the indictment, . . . triggers harmless error analysis" (unless there is a failure to object). *Id*. "A variation between the evidence at trial and the indictment generally does not rise to the level of an unconstitutional constructive amendment if it does not raise the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (citing *United States v. Miller*, 471 U.S. 130 (1985) (distinguishing constructive amendments from variances on the basis that the former "*broaden[]* the possible bases for conviction from that which appeared in the indictment")). The "indictment must be assessed on its own terms." *Farr*, 536 F.3d

- 6 -

at 1186.

Here, the particulars in the indictment stated Rucker possessed "a Smith & Wesson, Model M 60-7, .38 S.&W. SPL revolver." (R. Vol. 1 at 119). Rucker's argument relies on the testimony at trial alone, but the gun Rucker was alleged to have possessed was identified by the witnesses, viewed by the jury, and admitted into evidence. It was engraved with the markings ".38 S.&W. SPL" (Appellee's Addendum at 6.) Trial testimony also established the gun discovered in the Crown Royal bag carried by Rucker was a Smith & Wesson revolver, Model 60-7, .38 special revolver. Rucker complains this is not enough because the government did not produce evidence the gun was a "Model **_M_** 60-7" or adduce testimony that "SPL" means "special." Thus, the jury instruction which allowed the jury to find him guilty if he possessed "any firearm," impermissibly broadened the charge against him.

The government conceded the use of the initial "M" was in error as it is merely redundant of the word "Model." It also conceded it did not produce testimony explaining the meaning of "SPL." (Appellee's Br. at 39.) Nonetheless, it maintains these slight inadvertent deviations do not amount to error of any sort. First, it argues the specific type of firearm possessed by a felon is not an essential element of the offense charged under § 922(g), citing *Hamilton*, 992 F.2d 1126, 1130 & n.6 (10th Cir. 1993). While that may be true, it was the government's choice to specifically describe the weapon in the indictment, thus making it an element. *See Bishop*, 469 F.3d at 903 ("[T]he constructive amendment arose because of the government's choice to word the indictment narrowly.").

The government's second argument is more persuasive. It contends "the indictment described the firearm as a Smith & Wesson, .38 caliber revolver, and the testimony at trial never strayed from this description." (Appellee's Br. at 38.) We agree. The record clearly demonstrates the gun described in the indictment was the same gun produced at trial and which the jury convicted Rucker of possessing. For example, the chain of custody was scrupulously presented. Officer Carrier testified the serial number on the gun he discovered in the bag was the same serial number on the gun at trial. A firearms expert further testified the model designation, 60-7, was significant because it indicated the year this particular model was put in production. Rucker provided no evidence that he was prejudiced by the inclusion of the letters "M" or "SPL" in the indictment because it may describe some other Smith & Wesson weapon.

Rucker does not complain he did not have notice of the evidence against him and does not suggest he may possibly be subject to double-jeopardy on the basis of the jury's conviction in this case.[2] *See Hamilton*, 992 F.2d at 1130 ("A variance will cause a conviction to be overturned only when . . . the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy." (quotations omitted)). While there may be slight differences, there are no contradictions between the indictment, the evidence, or the instruction to the jury; "the crime for which the defendant was convicted at trial was

---

[2] The pistol was so precisely described in the indictment and at trial that there is no realistic possibility of a subsequent prosecution for possession of it regardless of whether he was convicted or acquitted in this case.

charged in the indictment." *Farr*, 536 F.3d at 1180.  To the extent there was any error,

Rucker fails to show it affected his substantial rights in any manner.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge