*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

<u>**ENTRY ORDER**</u>

SUPREME COURT DOCKET NO. 2010-172

APRIL TERM, 2011

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | District Court of Vermont, |
| | } | Unit No. 2, Bennington Circuit |
| | } | |
| Donald R. O'Dell, Jr. | } | DOCKET NO. 198-2-09 Bncr |

Trial Judge: David Suntag

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a judgment of conviction, based on a jury verdict, of aggravated assault with a deadly weapon. He contends the trial court erroneously: (1) coerced a guilty verdict by placing a time limit on the jury's deliberations; and (2) denied a defense request to present a witness out of order. We affirm.

The events that gave rise to the conviction may be briefly summarized. Additional material facts relating to the specific claims on appeal will be set forth in the discussion which follows. The complainant lived with his wife in a rented cabin at the Walk in the Woods Motel in Woodford. On the evening of February 18, 2009, he approached a snow plow that was clearing the motel parking lot to ask the driver not to pile snow in front of his cabin. The driver, later identified as defendant, also lived at the motel and traded rent for plowing services. The complainant testified that defendant, a white man, opened the truck door and angrily told the complainant, a black man, not to give him orders and to "take [his] monkey ass back to the jungle where [he] was from." A short time later, as the complainant approached the truck again, defendant exited the vehicle with what appeared to be a crowbar, yelled racial slurs at the complainant, and threatened to kill him. The complainant, in response, said that he was going to call the police and turned to leave when defendant struck him on the head with the crowbar. The complainant staggered, and defendant swung several more times striking his arm and shoulder. The complainant ran into the motel lobby, reported the incident to another resident and the motel manager, and called the police.

The other resident recalled that the complainant was shouting "he's going to kill me" and reported that defendant had attacked him with a crowbar. She saw defendant with what appeared to be a tire iron in his hand, and observed a laceration on the complainant's head and a bump "about the size of a mango." The motel manager also observed a large bump on complainant's head.

A young man who had recently checked into the motel with his family because of the snow storm observed much of the incident from about ten to fifteen yards away, while he was standing outside making a cell phone call. He recalled observing a black man approach the snow plow and saw a white man in front of the plow with a "long cylindrical object" in his hand. The

witness observed the white man strike the black man on the head with the object, and then strike him three to four more times. The witness returned briefly to his room, then went back outside, where he observed the snow plow driver throw what appeared to be the cylindrical object into the woods behind the motel.

The state trooper who investigated the incident observed a laceration and a "baseball sized welt" on the complainant's head, several lacerations on his forearm, a swollen shoulder, and several rust-colored marks or striations on the complainant's shirt. The trooper spoke with defendant, who was holding a meat patty to his eye. Defendant claimed that the complainant had struck him and attacked him with a knife. The officer observed no injuries to defendant's eye, and defendant sought no medical attention for the claimed injury. At trial defendant testified in his own behalf, denying that he had attacked the complainant, and claiming that he had been the victim of an assault. Defendant also called two character witnesses who testified that the complainant had a reputation for untruthfulness.

The jury returned a verdict of guilty on the charge of aggravated assault with a deadly weapon. Defendant was later sentenced to a term of thirteen years to life as an habitual offender based on several prior felony convictions. This appeal followed.

Defendant first asserts that the trial court improperly coerced a verdict by setting a time limit on the jury's deliberations. The issue arose as follows. During a pretrial conference in October 2009, the court confirmed that the case was scheduled for a two-day trial, although defense counsel stated at the time that it might be completed in one. Several months later, at the end of the first day of trial—a Thursday—the court informed counsel at the bench that he intended "to wrap it for the day." Defense counsel thereupon indicated that a defense witness, Dr. Lefebvre, had been subpoenaed only for the first day of trial and was present to testify but would not be available "tomorrow unless I give him a new subpoena, but I suspect this is going to go beyond tomorrow." The trial court responded: "It can't go beyond tomorrow. It isn't possible to go beyond tomorrow. I'm leaving—I'm going out of state on Saturday. I'm not coming back. We scheduled it for two days when you told us you thought it would be a day . . . ." The court continued: "[I]t can't go beyond tomorrow. . . . Do what you have to do with your doctor. You subpoena him, you subpoena him."

After some additional discussion concerning other witnesses, the court restated its view on the imperative to complete the trial, stating: "Okay. But we're going to go. There is no option. It has to end tomorrow." Defense counsel said, "Okay." The court responded, "Thought I was pretty clear about that . . . ," and defense counsel then repeated, "That's fine by me."

After the defense rested at the end of the second day of trial—without having called Dr. Lefebvre—the court excused the jury and addressed counsel as follows: "It's about 4:25 but it's not as though we really have an option. The Court is not open tomorrow. It's not open Sunday, and I'm not here all next week. So, we will need to go on." The court then explained that it wished to inform the jury as to "what we're doing" and determine whether it was impossible for any them "to be here tonight" and further indicated that it would like to do so in the jury room rather than in open court. Counsel agreed, and the court subsequently returned to explain that he had informed the jury of the plan and asked them if any had any "difficulty about staying late." None had so indicated, and the court observed that their "general reaction was a desire to go ahead anyway today and not come back another day in any event. So I think they're fine."

Following closing arguments and jury instructions, the jury began deliberations. During deliberations, the jury asked to have certain testimony replayed, which the court allowed. After

about four hours, the jury returned with a guilty verdict. Defendant later moved for a new trial based, in part, on the court's refusal to allow Dr. Lefebvre to testify at the end of the first day of trial. The court denied the motion, noting that defendant failed to subpoena the witness to appear for the second day, as the court had advised, and that—based on Dr. Lefebvre's testimony at the motion hearing—there was no basis to conclude that defendant was prejudiced by the court's ruling.

About two weeks later, defendant moved to reconsider the denial of the motion for new trial based, in part, on "newly discovered evidence." The evidence in question consisted of a letter that defense counsel had recently received from one of the alternate jurors in defendant's trial. The letter recalled that the trial court had addressed the jury in the jury room before final arguments, informing them that he had "imminent travel plans" to the West coast. The letter states that the juror interpreted the court's remark "to encourage, and to bestow [the court's] official blessings, upon a quick verdict."

Defendant's motion to reconsider was accompanied by a motion to recuse the trial court from ruling on the matter. The motion was referred to the Administrative Judge, who denied it, finding no basis to conclude that the court could not fairly rule on the motion. The trial court subsequently issued a written ruling in April 2010, finding "no irregularity in its statement to the jury regarding the need to complete the trial that day, even including reference to the judge's personal plans." First, the court concluded that the claim had been waived, recalling that "[t]he parties, with knowledge of the upcoming weekend and the [court's] unavailability the next week, agreed that the jury should be informed that trial needed to be completed that day." Second, the court found no basis to conclude that the jury had been improperly influenced, observing that they had deliberated for over four hours and had asked for certain testimony to be replayed, demonstrating that they were "diligent, hardworking," and fully engaged. Accordingly, it denied the motion to reconsider. This appeal followed.

Courts are generally in agreement that it is impermissibly coercive to place a specific deadline on a jury's completion of deliberations. See, e.g., United States v. McElhiney, 275 F.3d 928, 947 (10th Cir. 2001) (reaffirming rule that setting time limit on jury deliberations "to secure a quick verdict prevents fair and thoughtful deliberation by a jury" (quotation omitted)); United States v. Green, 523 F.2d 229, 236 (2d Cir. 1975) (reviewing cases which support "the proposition that it is coercive for the trial judge to set a time limit on the jury's deliberations"); State v. Stevens, 343 A.2d 592, 593 (Me. 1975) ("It is generally held that informing the jurors that there is a time limit upon their deliberations carries such a danger of interfering with full, free, and untrammeled consideration of the evidence as to make the validity of the verdict suspect."); Downey v. State, 731 P.2d 350, 353 (Nev. 1987) (observing that "[c]ourts have found reversible error in giving a jury a deadline for completing deliberations"). This Court has acknowledged the principle as well. See State v. Hudson, 163 Vt. 316, 324 (1995) (rejecting claim that trial court improperly coerced verdict by informing jurors they would be sent to a hotel if they did not reach a verdict by 10:00 that night while emphasizing that trial court had "made it clear that it did not intend to suggest that it was imposing a time limit for reaching a verdict").

The trial court's acknowledged statement to the jury here "regarding the need to complete the trial that day" came close to precisely the sort of deadline that this and other courts have proscribed. Nevertheless, we agree with the trial court that the claim was waived. It is well settled that review for error, including plain error, is waived where a party deliberately considers an issue and makes an intentional decision to forego it. See United States v. Cruz-Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009) (reaffirming principle that appellate review is unavailable

3

for errors that are affirmatively waived whereas claims may be reviewed for plain error where party through neglect merely "fail[s] to make a proper objection" (quotation omitted)).

It is clear from the record summarized above that defense counsel was well aware of the court's unequivocally expressed determination to complete the trial within the two-day schedule, and affirmatively accepted it, stating "That's fine by me." Consistent with that intention, the court made it clear to counsel that it intended to keep the jury to deliberate on Friday night, reiterating that the trial could not continue into the weekend or beyond, and counsel agreed that the court could explain the plan to the jury off the record. After the meeting, the court informed counsel that the jury's expressed desire was "to go ahead anyway today and not come back another day." Under the circumstances, therefore, defendant's claim on appeal that counsel was unaware of the plan and the court's communication to the jury, and failed to assent to it, is unpersuasive. We conclude, accordingly, that the claim was waived and is not cognizable on appeal. See State v. Goudeau, 85 S.W.3d 126, 128 (Mo. Ct. App. 2002) (holding that claim of coerced verdict was waived where trial court informed jury that "[w]e do not plan for you to come back tomorrow. Please continue your deliberations" and defense counsel indicated that court's statement was "fine").

Defendant additionally contends the court erred in failing to allow Dr. Lefebvre to testify out of order at the conclusion of the first day of trial. The claim requires no extended discussion. As the trial court observed and the record makes clear, defendant was free to subpoena the witness to appear the next day, he failed to do so, and he offers no explanation for the omission. Moreover, the doctor's testimony at the hearing on the motion for new trial refutes any possible finding of prejudice; he corroborated that the victim had suffered a head injury resulting from a "likely blunt [force] trauma," acknowledged that the injuries were "consistent with a good blow to the head" which could have been caused by a crowbar, and could not rule out the possibility of a concussion. Accordingly, we find no basis to disturb the court's ruling. See State v. LeClaire, 2003 VT 4, ¶ 14, 175 Vt. 52 (court will not reverse evidentiary ruling absent showing of abuse of discretion resulting in prejudice).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice