NOT DESIGNATED FOR PUBLICATION

No. 121,647

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DANNEISHA NESBITT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed July 23, 2021.
Affirmed.

*Jennifer Bates*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired, assigned.

PER CURIAM: A jury convicted Danneisha Nesbitt of aggravated robbery following her actions with three other women in stealing jeans from Buckle, a store in Lawrence, Kansas. Nesbitt appeals her conviction, claiming the district court committed several trial errors by: (1) constructively amending the information with its jury instruction on the elements of aggravated robbery, (2) denying her motion in limine seeking to prohibit witnesses from using the word "robbery," (3) denying her motion for

a mistrial due to a juror's interaction with a police detective, (4) denying a multiple acts instruction, and (5) denying the defendant a fair trial based on cumulative error.

Following a review of the record, we find no error on the part of the district court. First, the district court did not constructively amend the information with its jury instruction on the elements of aggravated robbery because the instruction properly listed the elements of the crime. Second, the district court did not abuse its discretion in refusing to prohibit witnesses from using the word "robbery" or "aggravated robbery" to describe the events at Buckle as witnesses are not required to "tiptoe around" the use of certain words at trial, and the jury was properly instructed on the elements of aggravated robbery. Third, the district court did not err in denying Nesbitt's motion for a mistrial as the juror's innocent interaction with a police detective upon losing her cell phone was not misconduct, and any possible prejudice was eliminated by that juror's removal from the jury. Fourth, the district court did not err by rejecting a multiple acts instruction because the State had not alleged multiple ways in which Nesbitt had committed aggravated robbery. Finally, because the district court did not err in its handling of the trial, there was no cumulative error. Thus, we affirm Nesbitt's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2016, late in the afternoon, four women—including Nesbitt—walked into Buckle, where sisters Megan and Gwendolyn Ingersoll were working. The four women browsed the display of men's jeans by the cash register before splitting up to peruse the rest of the store. During their time in the store, the four women asked the sisters several questions and moved items around, actions Megan believed were tactics to distract them while the women plotted to steal from the store. After about 10 minutes, the women left. Due to their concerns, the sisters locked Buckle's back door and limited all customers to the street entrance.

A short time later, three of the women—but not Nesbitt—reentered the store. Megan heard rustling plastic and looked over to see the women putting jeans into a large plastic bag. Megan ran over and confronted the women, demanding they stop. In response, one of the women instructed another, "Mace that bitch." Megan received a spray of mace in her face from the woman wearing a knit hat. At that time, Gwendolyn ran over to help her sister. The woman in the knit hat also sprayed Gwendolyn in the face with mace and knocked off her glasses.

As her sister was being maced, Megan raced to the front doors, opened them to shout for someone to call the police, and then closed them again in an attempt to prevent the women from leaving with the stolen merchandise. The women tried to force their way out the door. The woman wearing the knit hat tried to slam Megan's head against the door, but Gwendolyn prevented her. At this point, the fracas spilled out of the front doors and onto the sidewalk in front of Buckle. The three women hit Megan, shoved her to the ground, and pulled out a chunk of her hair. Gwendolyn was also pushed to the ground and hit.

Two of the women managed to escape, although they dropped most of their stolen jeans. Megan caught the third woman—later identified as Unikua Elam—by the hair and, with help from a bystander, detained her until the police arrived.

A bystander tried to chase down one of the women. He watched her crawl into a white SUV vehicle with rust on the bumper. The bystander took a picture of the license plate before the car sped away. A police investigation revealed the women fled in a white Dodge Durango registered to Shaikeece Whisonant. Law enforcement used traffic and surveillance cameras and the toll road camera to track the vehicle coming from Topeka to Lawrence.

Eventually, Elam described what happened that afternoon to the police. Her information led law enforcement to Nesbitt—the driver of the Dodge Durango that day. The State charged Nesbitt with one count of aggravated robbery. At the jury trial, the Ingersoll sisters and the investigating officers described that afternoon's events. Elam testified about that day as well. The jury also watched surveillance footage collected from Buckle and a nearby building and listened to Nesbitt's interview with law enforcement.

As the parties worked through the jury instructions with the district court, they learned a juror had unauthorized communication with one of the witnesses, Detective M.T. Brown. The juror had lost her cell phone somewhere inside or near the courthouse, and she expressed dismay in front of the prosecutor, defense attorney, and Brown. Brown helped the juror narrow down the phone's location. The juror assured the district court she only spoke to Brown about her phone but admitted to telling the other jury members that she was lucky to have a detective help her. Arguing the juror's comments tainted the rest of the jury, Nesbitt moved for a mistrial. The district court denied the motion, reasoning the jurors would be able to set aside Brown's assistance and decide the case fairly. However, the district court did dismiss the juror and replaced her with an alternate.

The jury convicted Nesbitt of aggravated robbery, and the district court sentenced her to 88 months' imprisonment.

Nesbitt timely appeals.

I.    WAS THE AGGRAVATED ROBBERY CHARGE CONSTRUCTIVELY AMENDED BY THE JURY INSTRUCTIONS?

Nesbitt first argues the district court impermissibly and constructively amended the aggravated robbery charge against her when it changed inflicting bodily harm on "Gwen Ingersoll" in the information to "any person" in the jury instruction. Nesbitt

4

claims this change broadened the charge the State was required to prove because it allowed the jury to convict her based on acts beyond those alleged in the information. The State retorts that not all inconsistencies between charging documents and jury instructions constitute constructive amendments. It also argues the jury instruction did not alter the charged crime.

*Standard of Review*

"Whether a criminal complaint has been impermissibly constructively amended is reviewed de novo. *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008)." *State v. Holmes*, No. 116,338, 2017 WL 5617102, at *3 (Kan. App. 2017) (unpublished opinion).

*Analysis*

The State begins its response by claiming Nesbitt has not preserved the issue because she never raised it before the district court. The State claims Nesbitt couched her objection in general terms that the instruction broadened the information. The State's argument amounts to a distinction without a difference. While Nesbitt might not have used the specific term "constructive amendment," either before the district court or us, Nesbitt is arguing there was a constructive amendment that altered the aggravated robbery charge because the jury instruction opened her up to being convicted on more actions than what was included in the information. Nesbitt has preserved this issue.

The information against Nesbitt went through several iterations before trial. First, it alleged bodily harm was inflicted upon Megan Ingersoll. Then, it was amended to allege bodily harm inflicted upon Gwendolyn Ingersoll. The second amended information also alleged bodily harm was inflicted upon Gwendolyn Ingersoll. Jury instruction no. five, on the other hand, stated the State had to prove: "The defendant or another inflicted bodily harm on *any person* in the course of such conduct." (Emphasis added.)

5

A district court may permit an information to be amended any time before the verdict if there is no additional or different crime charged and the defendant's substantial rights are not prejudiced. K.S.A. 22-3201(e). An unconstitutional constructive amendment occurs "when the evidence presented at trial, together with the jury instructions," alters the charge in such a way as to charge a different offense from the one found in the charging document. *Farr*, 536 F.3d at 1180; *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir. 1988); see *Stirone v. United States*, 361 U.S. 212, 213, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960) ("The crucial question here is whether [the defendant] was convicted of an offense not charged in the indictment."). In assessing a constructive amendment claim, the ultimate inquiry is whether the crime for which the defendant was convicted at trial was the one enumerated in the charging document. To do so, courts must compare the charging document with the district court proceedings "to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document." *Farr*, 536 F.3d at 1180. Unconstitutional constructive amendments are reversible per se. 536 F.3d at 1185. But "not every minor variance between the facts as presented at trial and those alleged in the [charging document] amounts to an unconstitutional constructive amendment." 536 F.3d at 1181.

Because *Farr* was a federal criminal case, the Tenth Circuit Court of Appeals addressed charges brought by a grand jury indictment, not an information or complaint. Kansas courts have relied on the Tenth Circuit's reasoning when addressing constructive amendments. See *Holmes*, 2017 WL 5617102, at *3; *State v. Montes*, No. 104,563, 2012 WL 307532, at *5 (Kan. App. 2012) (unpublished opinion); *State v. Garner*, No. 102,790, 2012 WL 4794448, at *15-16 (Kan. App. 2012) (unpublished opinion). In *Holmes*, Holmes was charged with aggravated battery under K.S.A. 2015 Supp. 21-5413(b)(1)(B). The complaint charged Holmes with inflicting great bodily harm, disfigurement, or death, drawing its language from K.S.A. 2015 Supp. 21-5413(b)(1)(B). But the district court's preliminary instructions to the jury informed the jury the element the State needed to prove was causing physical contact "'in a rude, insulting, or angry

manner in any manner whereby great bodily harm, disfigurement or death can be inflicted.'" 2017 WL 5617102, at *2. The district court's final instructions to the jury used this same language—language that did not match K.S.A. 2015 Supp. 21-5413(b)(1)(B) but was drawn from the language of K.S.A. 2015 Supp. 21-5413(b)(1)(C).

The panel found the district court's error "permeated throughout the entirety of Holmes' trial" because, from the beginning, the jury believed it could convict based on an aggravated battery crime charged in the complaint; accordingly, the panel held the jury viewed "the entirety of the evidence . . . through an incorrect lens." 2017 WL 5617102, at *5. The *Holmes* panel explained a court cannot permit a defendant to be tried on charges not contained in the charging document. Relying on federal precedent, the panel explained that allowing such constructive amendments would render the procedural requirements established for amending charging documents meaningless. The panel held that Holmes was convicted of a different crime than what was charged in the complaint. Because the jury instructions given by the district court broadened the charge against Holmes, the panel held the error constituted an impermissible constructive amendment. 2017 WL 5617102, at *5.

Two other unpublished opinions from our court help shed further light on what constitutes an unconstitutional constructive amendment. In *Montes*, the panel held that where the complaint alleged very specific overt acts, and the jury instruction stated a general overt act, the jury instruction impermissibly broadened the charge against the defendant. 2012 WL 307532, at *5. But in *Garner*, a different panel of our court held the change from charging the defendant from "taking a gun 'from the presence'" of the victim to taking the gun "'from the person or presence'" of the victim was not a constructive amendment because taking from a victim's person necessarily involved taking from the victim's presence as well. 2012 WL 4794448, at *16. The instruction did not permit the jury to convict the defendant on a different set of facts than the ones provided in the charging document. 2012 WL 4794448, at *16.

7

Here, the second amended information charged Nesbitt with aggravated robbery where bodily harm was inflicted upon Gwendolyn, in violation of K.S.A. 2016 Supp. 21-5420(b)(2). Jury instruction no. five instructed the jury must find bodily harm was inflicted upon any person. This difference does not rise to the level of an unconstitutional constructive amendment because the jury instruction did not change the crime Nesbitt was charged with. Unlike in *Holmes*, the language here describing the elements of aggravated robbery in the information and jury instruction no. five match each other, and both matched the language in K.S.A. 2016 Supp. 21-5420(b)(2). The jury was not conditioned before trial or at the reading of the instructions to find Nesbitt guilty of an uncharged crime.

Moreover, the evidence presented at trial did not lead to the jury convicting Nesbitt of a different offense than the one charged. Nesbitt was charged with aggravated robbery which included acts involving inflicting bodily harm on Gwendolyn. At trial, both Megan and Gwendolyn detailed the attacks of the three women as they tried to escape from Buckle. The sisters described how both were maced and the times the women tried to hit them and push them over in their efforts to flee with the ill-gotten jeans. Nesbitt was charged and convicted of aggravated robbery under K.S.A. 2016 Supp. 21-5420(b)(2). The essential elements of the charged crime were never altered.

Additionally, the district court used the Pattern Instructions for Kansas (PIK) for the jury instructions, which district courts are encouraged to use. *State v. Adams*, 292 Kan. 151, 165, 254 P.3d 515 (2011). The jury instruction for aggravated robbery merely requires bodily harm to be inflicted on "any person" rather than a specific person. See PIK Crim 4th 54.410 (2013 Supp.).

Additional support for finding that no unconstitutional constructive amendment occurred comes from another Tenth Circuit case, *United States v. D'Amelio*, 683 F.3d 412 (10th Cir. 2012). Drawing from *United States v. Dupre*, 462 F.3d 131, 140-43 (2d Cir.

2006), the *D'Amelio* court held a constructive amendment did not occur when the language following the "to wit" clause was not proved. The language after the "to wit" clause is not an essential element of charged crime. 683 F.3d at 422. Instead, the failure to prove the language after the "to wit" clause was a "variance" that was not fatal to the prosecution because the charging document put the defendants on notice of what the government intended to prove. 683 F.3d at 422-23. In other words, the essential elements of the crime involve the statutory elements, not the specific actions or specific persons listed in the charging document. Additionally, the Tenth Circuit found the government provided the defendant with notice of the evidence it would rely on at trial. 683 F.3d at 423.

K.S.A. 2016 Supp. 21-5420(b)(2) defines aggravated robbery as a robbery "committed by a person who . . . inflicts bodily harm upon any person in the course of such robbery." This language was reflected in the second amended information and in jury instruction no. five. The essential elements of aggravated robbery were included in the second amended information and jury instruction no. five. Additionally, Nesbitt was on notice that the State would prove bodily harm by introducing the testimony of Megan and Gwendolyn. Both testified at the preliminary hearing about their injuries and the attacks from the three women.

Jury instruction no. five did not constitute an impermissible constructive amendment. The essential elements of aggravated robbery were not changed. The evidence at trial and the jury instruction led the jury to convict Nesbitt of the same crime she was charged with.

II.     DID THE DISTRICT COURT ERR IN DENYING NESBITT'S MOTION IN LIMINE?

Nesbitt next argues the district court erred in denying her motion in limine to prevent witnesses from describing the events at Buckle as a robbery. Nesbitt argues that

by using the term "robbery" and describing the attacks, Brown influenced the jury to decide the stealing of the jeans constituted aggravated robbery. The State counters that the police officers used "robbery" to describe the type of investigation they performed and the Ingersoll sisters used it colloquially. The State argues witnesses may use common words in common ways, even if those words may also have a legal meaning.

*Standard of Review*

> "A district court applies a two-prong test when ruling on a motion in limine. The court evaluates first whether the material or evidence in question will be inadmissible at trial and then that a pretrial ruling instead of a ruling at trial is justified (a) because the mere offer or mention of the evidence at trial may cause unfair prejudice, confuse the issues, or mislead the jury, (b) considering the issue during trial might unduly interrupt or delay the trial, or (c) a pretrial ruling may limit issues and lead to greater litigation efficiency. [Citation omitted.]" *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Our review of a district court's decision to admit evidence is a two-step process. First, we must determine whether the evidence is relevant. *State v. Lowery*, 308 Kan. 1183, 1226, 427 P.3d 865 (2018). "[A]ll relevant evidence is admissible." K.S.A. 60-407(f). Evidence is relevant if it is material and probative. If the evidence is relevant, we determine whether the probative value of relevant evidence outweighs its potential for undue prejudice. Whether the evidence's probative value outweighs its prejudice is reviewed for abuse of discretion. *Lowery*, 308 Kan. at 1226. Discretion is abused when a district court's decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. *Ingham*, 308 Kan. at 1469. The party alleging the abuse bears the burden to prove it. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

10

*Analysis*

Nesbitt filed a motion in limine before trial to prevent witnesses from using the terms "robbery" or "aggravated robbery" at trial to describe what happened at Buckle. Nesbitt expressed concern that using either term would influence the jury in its decision on the ultimate issue—whether Nesbitt was guilty of aggravated robbery, robbery, theft, or none of the above. The district court denied the motion. Nesbitt continued to object at trial.

On appeal, Nesbitt does not challenge the relevancy of the witnesses' use of "robbery" in their testimony. As a result, we need not review the first part of the analysis. Nesbitt only complains that the probative value of the term "robbery" was outweighed by its prejudicial effect. Thus, we focus our analysis here.

A district court may, in its discretion, exclude evidence if it finds the evidence's probative value is substantially outweighed by the risk of prejudice. K.S.A. 60-445. While "'Kansas law favors the admission of otherwise relevant evidence, . . . the exclusion of relevant evidence is an extraordinary remedy that should be used sparingly. [Citation omitted.]'" *State v. Ross*, 310 Kan. 216, 224, 445 P.3d 726 (2019).

Nesbitt asserts that whether the women's taking of the jeans from Buckle was an aggravated robbery, robbery, or theft was a hotly contested issue at trial. Officers Donald Hicks and Brown testified a robbery occurred, and Nesbitt argues having law enforcement officers testifying that an aggravated robbery occurred could have easily influenced the jury's decision to find Nesbitt guilty of aggravated robbery.

"Witnesses and counsel may use common words and phrases that accurately and correctly describe people, things, and situations, even if the words or phrases have connotative meanings broader than the meaning intended in the trial context. Witnesses

and counsel are not required to tiptoe around" certain words, including possibly having to invent euphemisms to replace ordinary English. *Ingham*, 308 Kan. at 1470.

In *Ingham*, the defendant alleged the district court erred in letting the State use the terms "'pipe bomb'" and "'improvised explosive device'" to describe the devices he constructed because "those phrases have connotative meanings that would suggest to the jury that he was engaging in terrorist activities." 308 Kan. at 1468. The Kansas Supreme Court held the district court's decision was not an abuse of discretion because Ingham was on trial for creating and denotating explosives and the words described the devices he made. 308 Kan. at 1469-70.

Similarly, here, while robbery has a legal meaning, it also has a common meaning. A robbery is "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation; aggravated larceny." Black's Law Dictionary 1591 (11th ed. 2019). Megan and Gwendolyn used this ordinary meaning to describe the events at Buckle as a robbery. From their view, the women attacked them to steal jeans from the store. To an ordinary person, Buckle was robbed. Similarly—and going to the crux of Nesbitt's argument—Hicks and Brown used robbery to describe the type of investigation they performed. Despite Nesbitt's contention to the contrary, no witness told the jury Nesbitt committed aggravated robbery. The witnesses described what they observed or the actions they themselves took. Megan and Gwendolyn felt as though they were robbed while working at Buckle. Hicks and Brown explained they were tasked with conducting a robbery investigation. To require them not to use the word "robbery" would have forced them into awkward euphemisms instead of ordinary English.

The jury was instructed on the elements that must exist to find Nesbitt guilty of aggravated robbery. The first instruction told the jury to ignore any statements that were unsupported by evidence. Nothing in the record suggests the jury ignored that instruction. See *State v. Rogers*, 276 Kan. 497, 503, 78 P.3d 793 (2003) ("As a general rule, juries are

presumed to have followed instructions given by the trial court."). Nesbitt does not dispute the women took jeans from Buckle. Megan, Gwendolyn, and Elam all testified that the women maced and hit Megan and Gwendolyn. The evidence of an aggravated robbery was overwhelming.

The witnesses' use of the word "robbery" to describe what happened or the police's investigation did not influence the jury to find Nesbitt guilty of aggravated robbery. The district court did not err in denying Nesbitt's motion in limine.

III.    DID THE DISTRICT COURT ERR WHEN IT DENIED NESBITT'S MOTION FOR A MISTRIAL?

For her third issue, Nesbitt asserts the district court erred when it did not declare a mistrial after Brown helped a juror locate her lost cell phone. Nesbitt argues the juror informing the other jury members she was lucky to have a detective's help biased the jury in favor of Brown and prevented it from reaching an impartial verdict. The State counters that the district court's decision to excuse the juror cured any possible error. The State also points out the juror's conversation with Brown had nothing to do with the case and highlights the fact that it was not clear whether the juror identified Brown to the other jurors as the detective who helped her.

*Standard of Review*

A trial court may declare a mistrial if "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either [party]." K.S.A. 22-3423(1)(c). The statute creates a two-step process. First, the district court must determine whether there was a fundamental failure of the proceeding. If so, the district court then assesses whether it is possible to continue without injustice.

13

"In other words, the trial court must decide if the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. If not, the trial court must determine whether the degree of prejudice results in an injustice and, if so, declare a mistrial. [Citation omitted.]" *State v. Barlett*, 308 Kan. 78, 88, 418 P.3d 1253 (2018).

A district court's ruling on a motion for a mistrial is reviewed for abuse of discretion. Judicial discretion is abused if the decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; (3) based on a factual error. *Lowery*, 308 Kan. at 1226. The abuse of discretion inquiry is divided into two parts. We first ask whether the district court abused its discretion in deciding whether a fundamental failure existed, then we determine if the district court abused its discretion when deciding whether it was possible to continue without injustice. *Barlett*, 308 Kan. at 88-89. The party asserting an abuse of discretion bears the burden to prove its existence. *Thomas*, 307 Kan. at 739.

*Analysis*

"Allegations of juror misconduct trigger a progressive two-step inquiry to determine if . . . a mistrial . . . is warranted: (1) whether juror misconduct occurred, and (2) if so, whether the misconduct substantially prejudiced the right to a fair trial, meaning whether the State can show beyond a reasonable doubt that the misconduct did not affect the trial's outcome." *State v. Longoria*, 301 Kan. 489, 530, 343 P.3d 1128 (2015).

Juror misconduct generally describes communications between jurors with outsiders, witnesses, lawyers, or judges; actions by jurors in unauthorized viewing of the premises or outside research; or lies to the court about a juror's familiarity with the people or facts of the case. *State v. Jenkins*, 308 Kan. 545, 557-58, 422 P.3d 72 (2018).

When a juror is accused of holding an inappropriate conversation outside of the trial, the usual practice of the district court is to question the juror about the alleged

misconduct. "After an inquiry has been made, . . . an appellate court gives a high degree of deference to the trial court's findings concerning the credibility of witnesses and the perceived impact of the allegedly prejudicial event. [Citations omitted.]" *Longoria*, 301 Kan. at 531. External communication between a juror and a witness "does not invalidate a verdict unless the communication 'disturb[s] the exercise of deliberate and unbiased judgment.'" 301 Kan. at 531. "When the communication is entirely unrelated to the defendant's case[,] courts generally find insufficient prejudice to require a mistrial." *State v. Jakeway*, 221 Kan. 142, 148, 558 P.2d 113 (1976).

Here, the district court found no misconduct occurred and concluded Brown was simply trying to be nice and help someone in need. The district court believed the jury could set aside Brown helping the juror and view the evidence impartially. Nevertheless, while the district court denied Nesbitt's motion for a mistrial, it agreed to replace the juror with an alternate.

The record supports the district court's finding that no misconduct occurred. The juror mentioned she lost her phone in front of Brown, the prosecutor, and defense counsel. Brown told the juror he could help by tracking her phone. There is no evidence the juror and Brown discussed Nesbitt's case. The juror said she did tell the other jurors that she was lucky a detective helped her out. But, considering the high degree of deference owed to the district court, nothing in the record suggests the juror's actions prejudiced the remainder of the jury.

Nesbitt does not explain how the district court abused its discretion. There is no allegation or evidence the district court committed an error of law or fact. A reasonable person could agree with the district court that a mistrial was unnecessary. Nothing in the record indicates the juror told the other jurors it was Brown who helped her or that this information influenced the jury's verdict—especially considering the overwhelming evidence of an aggravated robbery.

IV.    DID THE DISTRICT COURT ERR IN DENYING A MULTIPLE ACTS INSTRUCTION?

Nesbitt also argues a multiple acts instruction was necessary because there were multiple acts of violence against Megan and Gwendolyn when the three women were trying to escape with the stolen jeans. Nesbitt argues it is not clear which act the jury relied on to find her guilty of aggravated robbery. The State argues no instruction was necessary because all the violent acts happened at the same time, either inside or directly outside the store, in the women's attempt to escape the store with the stolen jeans.

*Standard of Review*

Multiple acts instructions are reviewed under a three-part framework. First, we must determine whether the case is a multiple acts case. Thus, the threshold question is whether jurors heard evidence of multiple acts, each of which could support the conviction. This is a legal question reviewed de novo. If it is a multiple acts case, we next ask whether error was committed. To avoid error, the State must tell the jury which act to rely on, or the district court must have instructed the jury to agree on a specific act to support the conviction. Failure to do either is error. Finally, we determine whether the error was reversible or harmless. *State v. Castleberry*, 301 Kan. 170, 185-86, 339 P.3d 795 (2014). "'Whereas the burden to show harmlessness generally shifts to the party who benefitted by the error, the burden to show clear error . . . remains on the defendant." *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014).

*Analysis*

The State asserts Nesbitt failed to request a multiple acts instruction. But the record reflects Nesbitt did request a multiple acts instruction after jury instruction no. five stated the jury must find bodily harm was inflicted against any individual, not just Gwendolyn. The district court denied this request.

16

A defendant has a right to jury unanimity as to the facts supporting the charged crime, and a multiple acts issue arises when the State alleges several different acts and each of them could support a conviction of the charged crime. *State v. Voyles*, 284 Kan. 239, 244, 160 P.3d 794 (2007). Acts are considered multiple acts "if they are factually separate and distinct. And incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a later criminal act is motivated by a 'fresh impulse.' [Citation omitted.]" *King*, 299 Kan. at 379. If the converse is true, there are no multiple acts. *State v. Williams*, 303 Kan. 750, 755, 368 P.3d 1065 (2016).

A four-part test assesses whether conduct involves multiple acts:

> "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' [Citations omitted.]" *King*, 299 Kan. at 379.

Nesbitt fails each part of the test. First, every act of bodily harm occurred in the same timeframe. The catalyst was Megan running over to the three women and telling them to drop the jeans. One of the women maced Megan in the face. Upon hearing the commotion, Gwendolyn ran over and was rewarded with mace to her face as well. As her sister was getting maced, Megan ran to the front doors, opened the door to yell for someone to call the police, and then attempted to hold the doors shut. The women tried to slam Megan's head against the door frame to get past her and outside. The altercation spilled outside onto the sidewalk in front of Buckle where the women proceeded to hit Megan before two of them escaped. All these acts cascaded from the moment Megan tried to stop the women from stealing the jeans. Seconds separated them.

Despite Nesbitt's assertion to the contrary, the acts occurred at the same location. The acts of bodily harm started in the store before spilling through the doors onto the sidewalk outside of the store. Although technically happening in two different places—inside the store and outside the store on the sidewalk—to state the acts did not occur in the same location is splitting hairs too finely. A public door is all that separated the two locations—a matter of a few feet.

Similarly, Nesbitt's argument fails the third and fourth parts of the test. The acts had a causal relationship with no intervening events, and there was no fresh impulse motivating some of the conduct. The women's goal was to escape Buckle with the stolen jeans. Each act followed the other to further that goal.

There were no multiple acts. The acts of bodily harm that Nesbitt attempts to separate were part of the same action. The district court did not err in denying the request for a multiple acts instruction.

V.    DOES CUMULATIVE ERROR REQUIRE REVERSAL OF NESBITT'S CONVICTION?

Finally, Nesbitt argues cumulative error entitles her to a new trial.  We review de novo "whether the totality of circumstances substantially prejudiced a defendant and denied the defendant a fair trial based on cumulative error." *State v. Brown*, 298 Kan. 1040, 1056, 318 P.3d 1005 (2014).

When considered collectively, cumulative error "may be so great as to require reversal of a defendant's conviction." *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). However, "'[o]ne error cannot support reversal under the cumulative error doctrine.'" *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020).

Because no error occurred in the district court's denial of Nesbitt's motion in limine or motion for a mistrial, there was no cumulative error.

Affirmed.